DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from judgments of the Lucas County Court of Common Pleas dismissing the four count complaint of plaintiffs-appellants John J. Regan, IV, and Richard Hamilton. Pursuant to 6th Dist.Loc.App.R. 12(B), this case is hereby removed from the accelerated calendar. From the trial court's judgments, appellants assign the following as error:
"FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN:
 a) FAILING TO RULE FOR PLAINTIFFS UPON PLAINTIFFS' DEFAULT JUDGEMENT [sic] MOTION UNTIL THE CASE WAS REMANDED BACK TO THE TRIAL COURT AND
 b) ALLOWING DEFENDANT TO ANSWER MONTHS AFTER SUCH ANSWER WAS DUE AND PERMITTED.
"SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN THEY [sic] BASED THEIR [sic] ENTIRE DECISION TO DISMISS ON THE PREMISE THAT ALL AGREEMENTS INVOLVING AN INTEREST IN LAND MUST BE IN WRITING.
"THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DISMISSING CLAIMS OF TORTIOUS INTERFERENCE BASED UPON THE STATUTE OF FRAUDS.
"FOURTH ASSIGNMENT OF ERROR
 TO DECIDE A RULE 56 MOTION WITHOUT AFFIRMATIVE EVIDENCE IS PLAIN ERROR."
On August 25, 2000, plaintiffs filed a four count complaint against four separate defendants: Robert M. Paxton, individually; Ronald P. Charney, Jr., individually; Robert M. Paxton and Ronald P. Charney, Jr., Partners, an Ohio General Partnership ("the partnership"); and Richard Eberlin.
The first count of the complaint alleged breach of contract against two defendants, Robert Paxton, individually, and Ronald Charney, individually, and requested specific performance under the alleged contract and/or money damages. The second count of the complaint alleged fraud against two defendants, Robert Paxton, individually, and Ronald Charney, individually, and requested compensatory and punitive damages, attorney fees and costs. The third count of the complaint alleged tortious interference with a business relationship against three defendants, Robert Paxton, individually, Ronald Charney, individually, and the partnership and sought compensatory damages, punitive damages, attorney fees and costs. The fourth and final count of the complaint alleged tortious interference with a business relationship against Richard Eberlin and requested compensatory and punitive damages, attorney fees and costs.
On September 26, 2000, two defendants, Robert Paxton, individually, and Ronald Charney, individually, filed an answer to the complaint and also filed a motion to dismiss the complaint against them for failure to state a claim upon which relief could be granted. On October 2, 2000, appellants filed a motion for default judgment against one defendant, the partnership. In response to the motion for default judgment, counsel for defendant Richard Eberlin filed a motion to amend the answer filed on September 26, 2000 to include Eberlin's name in the answer previously filed. The court granted the motion to amend.
On November 2, 2000, the trial court filed the following order:
 "This matter is before the Court upon Plaintiff's [sic] Motion for Default Judgment filed on October 2, 2000. Due to Defendant's [sic] Motion Instanter to Amend Answer on Behalf of Defendant Eberlin having been granted, it is therefore ORDERED, ADJUDGED AND DECREED
that Plaintiff's [sic] Motion for Default Judgment is hereby DENIED."
There is no trial court entry addressing the plaintiffs' motion for default judgment filed against the partnership.
The trial court's opinion and judgment entry addressing defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted was journalized on November 29, 2000. The court found the motion to dismiss well-taken in part and dismissed the first, third and fourth counts of the complaint, leaving only count two alleging fraud against defendants Paxton and Charney, individually.
Subsequently, defendants Paxton and Charney, individually, filed a motion for summary judgment on the remaining count of fraud. The lower court granted that summary judgment motion in an opinion journalized on February 20, 2001. Appellants thereafter filed a notice of appeal from the trial court's entry granting summary judgment. In a decision and judgment entry of April 25, 2001, we determined that the trial court's judgment of February 20, 2001 was not a final appealable order because the judgment did not contain either a judgment entry granting appellants a default judgment against the partnership or a Civ.R. 54(B) determination that there was no just reason for delay. Accordingly, we remanded the case to the trial court for the limited purpose of allowing the trial judge to determine whether he wanted to dispose of the partnership by default judgment or to add a certification to the February 20, 2001 judgment entry that there is no just reason for delay.
Upon remand to the trial court, the defendants filed a motion for leave to amend the answer to add the partnership as an answering defendant. That motion was granted. The partnership further filed a motion to dismiss count three of the complaint for failure to state a claim upon which relief could be granted. On June 8, 2001, the trial court filed an opinion and judgment entry granting the partnership's motion to dismiss. In pertinent part, the court stated that because count three did not state a claim against the only two partners of the partnership, it could not state a claim against the partnership.
In their first assignment of error, appellants assert that the trial court erred in failing to rule on their motion for default judgment against the partnership until the case was remanded back to the trial court and in allowing the partnership to file an answer to the complaint following the remand. For the following reason, we find that we do not have jurisdiction to review this assignment of error.
As we explained in our remand order of April 25, 2001, the trial court's judgment of February 20, 2001 was not a final appealable order. Accordingly, despite the limiting language of our remand order, upon remand from this court the trial court had jurisdiction to enter an order adjudicating all of the claims and rights and liabilities of all the parties. See Civ.R. 54(B). Once the trial court entered the final order of June 8, 2001, the court's earlier judgment of February 20, 2001 became a final appealable order and we reinstated the appeal. See this court's order of June 22, 2001. Appellants, however, never filed a notice of appeal from the trial court's June 8, 2001 judgment entry granting the partnership's motion to dismiss. Because that dismissal constituted an adjudication of the final remaining claim and party to the case, it was a final appealable order. R.C. 2505.02. Accordingly, to challenge that order, appellants were required to file a notice of appeal within thirty days of the date of the order. App.R. 4(A). Moreover, pursuant to App.R. 3(D), a notice of appeal must designate the judgment, order or part thereof from which the appeal has been taken. Appellants' notice of appeal of March 13, 2001 designates that appellants are appealing from the trial court's decision of February 16, 2001 granting defendants' motion for summary judgment. Appellants never filed a notice of appeal from the June 8, 2001 entry or requested an amendment, pursuant to App.R. 3(F), of their previously filed notice of appeal.
Accordingly, this court has no jurisdiction to review the trial court's judgment of June 8, 2001 granting the partnership's motion to dismiss and the first assignment of error is not well-taken.
The second and third assignments of error are interrelated and will be discussed together. Appellants assert that the trial court erred in dismissing the breach of contract and tortious interference claims on the ground of failure to comply with the statute of frauds.
Appellate review of a trial court's decision to dismiss a claim pursuant to Civ.R. 12(B)(6) is de novo. Hunt v. Marksman Prod., Div. ofS/R Industries, Inc. (1995), 101 Ohio App.3d 760, 762. In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. O'Brien v. University Community Tenants Union
(1975), 42 Ohio St.2d 242, syllabus. The court must presume that all factual allegations in the complaint are true and construe all inferences that may be reasonably drawn therefrom in favor of the non-moving party.Desenco, Inc. v. Akron (1999), 84 Ohio St.3d 535, 538.
Appellants' complaint addressed the purchase of property located at 5700 Alexis Road, Toledo, Ohio (the "property"). For purposes of reviewing this assignment of error, we must accept the following allegations as true. The property had been seized by the federal government and was scheduled to be auctioned off on October 6, 1999. Between October 1 and October 6,
1999, Paxton and Charney approached appellants and engaged in discussions concerning the formation of an Ohio business entity for the express purpose of owning, renovating, managing, renting, leasing, depreciating, dividing and disposing of the property. The parties then entered into a partially express and partially implied contract to form such a business entity. The contract called for appellants to have a 42.6 percent interest in the assets of the property and fifty percent of the voting rights of the business entity formed. Appellants, Paxton and Charney were present at the auction on October 6, 1999. Appellants, relying on the agreement with Paxton and Charney, did not enter a bid for the property but allowed Paxton to bid for themselves and Charney. Paxton submitted the highest bid for the property. Accordingly, pursuant to the partnership agreement, appellants, Paxton and Charney were the successful bidders. Paxton, however, did not take the title to the property. Rather, on November 30, 1999, Paxton and Charney formed their own business entity known as Robert M. Paxton and Ronald P. Charney, Jr., Partners. On December 3, 1999, a United States Internal Revenue Service deed to the property was recorded in Lucas County, Ohio with the partnership as grantee. Paxton and Charney refused to form an Ohio Business entity with appellants.
The complaint further alleged that appellants, Paxton, Charney and Eberlin were all agents of Farmers Insurance Company and that Paxton and Charney knew that telephone service in the area of the property was conducive to telephone solicitations. Paxton and Charney knew that appellants intended to establish their insurance agencies on the property so as to use the property for telephone solicitations. After the formation of the partnership, Paxton, Charney, and the partnership refused to lease the property to appellants but, rather, leased portions of the property to the district manager of Farmers Insurance Company and to Eberlin.
Based on these alleged facts, appellants claimed that Paxton and Charney refused to form an Ohio business entity with them and refused to recognize appellants' claims to the property, thereby breaching their contract with plaintiffs. Additionally, the complaint asserted that Paxton's and Charney's actions as set forth above amounted to fraud. Finally, appellants alleged that Paxton, Charney, the partnership and Eberlin acted separately and in concert to disrupt appellants' business relationships, stifle competition and deny appellants a business entity for the property. In this regard, the complaint alleged that the defendants' actions had directly caused substantial disruption, interference and destruction of appellants' business.
In dismissing the breach of contract claim, the court held that because the claim alleged a violation of a "duty to plaintiffs' claims to the property" and because the agreement regarding that property was not in writing, the statute of frauds prevented appellants from recovering for breach of contract. Appellants now challenge that finding.
The statute of frauds is codified at R.C. 1335.05, which reads in relevant part:
 "No action shall be brought * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
"This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity." NorthCoast Cookies, Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342,348.
In the present case, it is undisputed that no writing exists regarding the parties' agreement. Rather, appellants assert that the parties entered into an agreement to form a partnership for the express purpose of owning, renovating, managing, renting, leasing, depreciating, dividing and disposing of the subject property. Appellees counter that because the sole purpose of the proposed partnership was to purchase real estate and benefit from the purchase, the contract was covered by the statute of frauds and was required to be in writing.
The parties have cited various cases in support of their viewpoints. Appellants rely primarily on the case of Wade v. DeHart (1926), 26 Ohio N.P. (N.S.) 560, aff'd 26 Ohio App. 177, and its progeny. In Wade, the parties entered into an oral partnership agreement for the purpose of building and selling houses. Under the agreement, the defendant was to provide the funds to purchase the real estate, the plaintiff was to contribute his time, skill and labor to building the houses, and the parties were to share the profits upon the sale of the properties. It was further agreed that upon the purchase of the real estate, the property would be titled in defendant's name. After property was purchased and the plaintiff began building the first house, the defendant refused to recognize the partnership. The plaintiff therefore filed suit, seeking an accounting and a declaration that the defendant be declared a trustee of the property for the benefit of the partnership. The trial court rejected the defendant's claim that the agreement was unenforceable pursuant to the statute of frauds and held:
 "A court of equity may enforce the obligations of the parties, inter se, growing out of the partnership agreement to deal in the purchase and sale of land and share the profits though the agreement is oral, the element of partnership taking the transaction out of the statute." Id. at 565-566.
Similarly, in Furth v. Farkasch (1927), 26 Ohio App. 258, 260, the court held that while the statute of frauds clearly applied to a contract for the buying and selling of real estate, it did not apply "to a partnership between two persons, which partnership was formed entirely for the buying and selling of real estate." Although not addressing the issue of the statute of frauds, the courts in Marzal v. Ameritrust (Oct. 27, 1983), Cuyahoga App. No. 46496, unreported, and In the Matter of the Estate ofCharles D. Manor (Oct. 17, 1986), Greene App. No. 86-CA-23, unreported, recognized that a contract creating a partnership need not be in writing.
Appellants assert that the line of cases applicable to this issue are those following Watson v. Erb (1877), 33 Ohio St. 35 . In Watson, the plaintiff wanted to purchase a plot of land but did not want the owners of the land to know that he was the buyer. He entered then into an oral agreement with the defendant under which the defendant would buy the land and then sell it to the plaintiff. After the defendant bought the land, he refused to sell it to the plaintiff. The court held that the statute of frauds prevented enforcement of the agreement because it was an agreement for the transfer of real estate. Similarly, in Kilbury v.Bennett (June 2, 1999), Delaware App. No. 98 CA 39, unreported, the plaintiff owned a parcel of land that he sought to develop. He then began the process of obtaining approval to split the land into three lots and built a house on one of the prospective lots. Prior to plaintiff's obtaining approval for the split, defendants entered into an agreement with plaintiff to purchase the house. Defendants then agreed orally to deed back to plaintiff the additional two lots after plaintiff obtained approval for the lot split. After plaintiff obtained that approval, defendants refused to deed the lots back to plaintiff and denied ever agreeing to do so. The trial court held, and the appellate court agreed, that the statute of frauds barred plaintiff's claim for breach of contract given that the alleged agreement conflicted with the purchase agreement, general warranty deed and title affidavit, and was not evidenced by any writing. Appellees assert that as in Watson andKilbury, the alleged contract in the instant case was one covering an interest in land and, as such, was required to be in writing. The trial court agreed and dismissed appellants' claim for breach of contract. For the following reasons we disagree.
In reviewing the above cited case law, it is clear that the distinguishing feature of those cases which apply the statute of frauds to the oral agreement at issue is the transfer or promise to transfer real property, already owned, from one partner to another or from one partner to the partnership. Gunsorek v. Heartland Bank (1997),124 Ohio App.3d 735, 744-745. In the present case, appellants never alleged that Paxton and Charney promised to transfer property to the partnership. Rather, the breach of contract claim hinges on the allegation that Paxton and Charney were to purchase the property on behalf of the partnership and failed to do so. Accordingly, appellants, in their first claim for relief, asserted a claim upon which relief could be granted and the trial court erred in granting appellees' motion to dismiss that claim.[1] The second assignment of error is therefore well-taken in part.
The remainder of the second assignment of error and the third assignment of error challenge the trial court's dismissal of appellants' third and fourth claims for relief which alleged tortious interference with a business relationship. Appellants assert that the trial court erred in dismissing these claims on the basis of the statute of frauds.
A claim for tortious interference with a business or economic relationship is defined as follows: "one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby." Juhasz v. Quik Shops, Inc. (1977), 55 Ohio App.2d 51, 57. As this court noted in Bauer v. Commercial Aluminum Cookware Co. (2000),140 Ohio App.3d 193, 199, in Ohio "such interference must be intentional because Ohio does not recognize negligent interference with a business relationship." See Smith v. Ameriflora 1992, Inc. (1994),96 Ohio App.3d 179, 186; Burnside v. Leimbach (1991), 71 Ohio App.3d 399,404.
In dismissing appellants' claims for tortious interference, the trial court held that appellants had failed to identify an uninvolved third party with whom appellants had a business relationship that was thwarted. Appellants now contend that their complaint identified Farmers Insurance Company as the third party. We disagree.
Appellants' claims asserting tortious interference read:
 "25. Plaintiffs incorporate paragraphs one through twenty-four as if fully rewritten herein.
 "26. Plaintiffs are agents of Farmer's [sic] Insurance Company.
 "27. Defendants Paxton and Charney are agents of Farmer's [sic] Insurance Company.
 "28. Defendants Paxton and Charney knew that the telephone service in the area of the Property is conducive to telephone solicitation and that Plaintiffs wished to arrange for such solicitation on the Property.
 "29. Defendants Paxton and Charney knew that Plaintiffs intended to establish their insurance agencies on the Property.
 "30. Defendants Paxton and Charney and Robert M. Paxton and Ronald P. Charney, Jr., Partners acted separately and in concert with each other to disrupt Plaintiffs [sic] business relationships and to stifle competition between Plaintiffs and their clients.
 "31. Defendants Paxton and Charney and Robert M. Paxton and Ronald P. Charney, Jr., Partners has rented or leased portions of the Property to the District Manager of Farmers Insurance Company to further Defendant's
 [sic] agencies to the detriment of Plaintiff's [sic] agencies while claiming to plaintiffs that to rent or lease to them would concentrate Farmer's [sic] agents in too small an area.
 "32. The intentional acts of one or more of the Defendants designed and calculated to accomplish the disruption, interference or destruction of Plaintiffs' business have directly caused substantial disruption, interference or destruction of Plaintiffs' business and have forced Plaintiffs to have increased costs and loss of business.
"* * *
 "33. Plaintiff [sic] incorporates paragraphs one through thirty-two as if fully rewritten herein.
 "34. Richard A. Eberlin (Eberlin) is a Farmer's [sic] Insurance Company Agent.
 "35. Defendants Paxton and Charney and Robert M. Paxton and Ronald P. Charney Jr., Partners rented or leased Property to Eberlin for an insurance agency.
 "36. Prior to the formation of Robert M. Paxton and Ronald P. Charney Jr., Partners, Eberlin acted in concert with Defendants to deny Plaintiffs a business entity for the Property.
 "37. Eberlin, separately and in concert with other Defendants have acted to interfere and disrupt the business relationships with Plaintiffs and to unlawfully take them from Plaintiffs.
 "38. The intentional acts of one or more of the Defendants designed and calculated to accomplish the disruption, interference or destruction of Plaintiff's [sic] business have directly caused substantial disruption, interference and potential destruction of Plaintiff's [sic] business."
In our view, this complaint fails to allege or even imply that appellees' actions induced Farmers Insurance Company to cease its business relationship with appellants. Rather, the complaint simply asserts that appellees' actions prevented appellants from opening an insurance agency on the property and prevented them from soliciting business in the area of the property. That is not a claim for tortious interference.
Accordingly, the remainder of the second assignment of error and the third assignment of error are not well-taken.
Finally, in their fourth assignment of error, appellants challenge the trial court's order granting summary judgment to appellees on appellants' claim for fraud.
In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted where there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
In moving for summary judgment below, appellees Paxton and Charney asserted that there can be no action for fraud when the claimed fraudulent conduct is the failure to execute an oral agreement for an interest in land. That is, because the oral contract at issue was unenforceable pursuant to the statute of frauds, appellants could not prevail in an action for fraud. Appellees did not support the motion with any evidence as contemplated by Civ.R. 56(C) but, rather, relied on legal arguments. In granting the motion, the trial court simply held that appellees produced law supporting their claim for summary judgment and that appellants had failed to demonstrate that a genuine issue for trial existed.
The case primarily relied upon by appellees in their memorandum in support of summary judgment, and evidently the case relied upon by the court, is Areawide Home Builders, Inc. v. Hershberger Construction, Inc. (Feb. 4, 1998), Summit App. No. 18514, unreported, and the cases cited therein. In pertinent part, appellees relied on the following language from Areawide Home Builders in support of their assertion that appellants had no claim for fraud:
 "The fraud exception to the Statute of Frauds `consists in the refusal to perform an agreement upon the faith of which plaintiff has been misled to his injury, and not a mere refusal to perform an agreement, which, by reason of the Statute of Frauds, cannot be enforced by legal action.' Marion Prod. Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265, * * * paragraph two of the syllabus. However, `fraud cannot be premised upon the mere refusal to honor an alleged parol agreement that is otherwise unenforceable pursuant to the statute of frauds, R.C. 1335.05, particularly if the relief sought is the direct or indirect enforcement of the contract.'
Malone v. Koening, 1995 Ohio App. LEXIS 2912, (July 5, 1995), Medina App. No. 2381-M, unreported, citing Marion Prod. Credit Assn.,40 Ohio St.3d at 273-76."
In Areawide Home Builders, however, the plaintiffs sought to enforce an oral agreement for the sale of real property. Such a contract is clearly covered by the statute of frauds and the court, in stating the above, found that a claimant could not avoid the statute of frauds through a claim for fraud.
Because, as we have discussed above, the alleged contract at issue is not covered by the statute of frauds, the trial court erred in relying on the above case law to support its conclusion that appellants had no claim for fraud. Beyond their legal argument, appellees did not produce any evidence in support of their motion for summary judgment that would support an assertion that they did not commit fraud in their dealings with appellants. Accordingly, the trial court could not properly find that there remained no genuine issue of material fact and the court erred in granting appellees' motion for summary judgment on the fraud claim. The fourth assignment of error is therefore well-taken.
On consideration whereof, the court finds that substantial justice has not been done the parties complaining. The judgment of the Lucas County Court of Common Pleas dismissing the first, third and fourth claims for relief is affirmed in part and reversed in part. The judgment granting appellees summary judgment on the second claim for relief is reversed. This case is remanded for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellees.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., Judges concur.
[1] In reaching this conclusion, we make no judgment regarding whether a partnership was actually formed by the parties. We are simply holding that appellants asserted a claim upon which relief could be granted if they proved all of the elements of their claim.