MARION PRODUCTION CREDIT ASSOCIATION, APPELLANT AND CROSS-APPELLEE, *v.* COCHRAN ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as Marion Production Credit Assn. *v.* Cochran (1988), 40 Ohio St. 3d 265.]

(No. 87-1691—Submitted September 27, 1988—Decided December 30, 1988.)

*Vorys, Sater, Seymour & Pease* and *John J. Kulewicz,* for appellant and cross-appellee.

*Inscore, Rinehardt, Whitney & Enderle* and *Larry L. Inscore,* for appellees and cross-appellants.

HOLMES, J. The court of appeals found that the Cochrans' counterclaim asserted a claim which avoided the Statute of Frauds and, in fact, stated a cause of action for fraud in the inducement which would have released the Cochrans from their obligations on the notes and the mortgage. We find this holding untenable in light of the record of the transactions and the content of the documents now before us. Accordingly, and for the reasons set forth hereinafter, we now reverse in part and affirm in part.

I

At the outset, we hold that it was error to allow the foreclosure and subsequent sale of the mortgaged premises prior to complete disposition of the pending counterclaim. In an action upon a note secured by a mortgage, the defendant is entitled to interpose all counterclaims and defenses he may have against the creditor. Civ. R. 13(A) and (B). See, also, *Pierce* v. *Tiersch* (1883), 40 Ohio St. 168, paragraph one of the syllabus; *Allen* v. *Shackelton* (1864), 15 Ohio St. 145, at paragraph one of the syllabus. In this regard, trial courts are imbued with authority to hold separate trials upon "any claim, cross-claim, counterclaim, or third party claim * * *." Civ. R. 42(B). However, whenever the court orders such separate trials on separate issues, the execution of all *judgments* determined upon a single claim should be stayed pending a final determination of the entire action as to all parties. Civ. R. 13(I) read in conjunction with Civ. R. 54(B), 56(D) and 62(E).

It is reasonably well-settled in Ohio that a court which has before it both a claim and a counterclaim cannot enter a final judgment in favor of either party until both claims have been determined. At that time, the amount of damages due to the party having the greater injury shall be reduced by the amount of damages suffered by the party having the lesser injury. *Gordon* v. *Steinmetz* (1905), 71 Ohio St. 372, 73 N.E. 512, at paragraphs one and two of the syllabus; *Tipton* v. *Tipton's Admr.* (1892), 49 Ohio St. 364, 30 N.E. 826. In a foreclosure proceeding, such final judgment will determine the rights of all the parties in the premises sought to be foreclosed upon. See *Benson's Admr.* v. *Stein* (1878), 34 Ohio St. 294, paragraph one of the syllabus. And where the mortgagor's damages ultimately exceed those of the mortgagee, the mortgagee's right to recover the premises is defeated.

II

We now consider whether the trial court abused its discretion in granting PCA's motion for leave to file a reply instanter to the Cochrans' pending counterclaim. The trial court concluded that, although no reply had been filed for nearly four years, such "failure to file a reply was the result of excusable neglect." In their cross-appeal, the Cochrans characterize the failure of PCA to file a reply until four years had elapsed as inexcusable neglect, "a complete disregard for the judicial system" and for the rights of the Cochrans, citing *GTE Automatic Electric, Inc.* v. *ARC Industries, Inc.* (1976), 47 Ohio St. 2d 146, 153, 1 O.O. 3d 86, 90, 351 N.E. 2d 113, 117, and *Griffey* v. *Rajan* (1987), 33 Ohio St. 3d 75, 514 N.E. 2d 1122. The Cochrans assert that if PCA is allowed leave to reply after such a lengthy delay, during which time they continually confronted PCA with the need to resolve the counterclaim, then the time requirements of the Civil Rules become meaningless.

Civ. R. 6(B) states, in pertinent part:

"[T]he court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."

This court has previously held that such a motion is addressed to the sound discretion of the trial court and will not be disturbed upon appeal absent a showing of abuse of discretion. See *Miller* v. *Lint* (1980), 62 Ohio St. 2d 209, 214, 16 O.O. 3d 244, 247, 404 N.E. 2d 752, 755; *Evans* v. *Chapman* (1986), 28 Ohio St. 3d 132, 135, 28 OBR 228, 231, 502 N.E. 2d 1012, 1016. Furthermore, the proper standard by which the trial court is required to analyze a request for leave to plead out of rule is, as set forth in the rule, that of excusable neglect. *Id.; Miller* v. *Lint, supra,* at 214, 16 O.O. 3d at 247, 404 N.E. 2d at 754-755. It must appear from the record that the successfully moving party made a showing of excusable neglect sufficient to support the trial court's finding to that effect. Moreover, the determination of whether neglect was excusable or inexcusable " 'must of necessity take into consideration all the surrounding facts and circumstances.' " *Griffey* v. *Rajan, supra,* at 79, 514 N.E. 2d at 1126, quoting *Colley* v. *Bazell* (1980), 64 Ohio St. 2d 243, 249, 18 O.O. 3d 442, 445, 416 N.E. 2d 605, 609. Courts must also remain mindful of the admonition that cases should be decided upon their merits, where possible, rather than on procedural grounds. *Griffey* v. *Rajan, supra,* at 79 and 81, 514 N.E. 2d at 1126 and 1127.

Turning now to the instant case, the record discloses PCA's admission that its failure to file a reply to the counterclaim was an oversight. Clearly, this amounts to an admission of neglect. The principal inquiry thus narrows to whether such neglect was "excusable" within the meaning of the preceding authority.

Upon a review of the trial court's opinion and the record established in the lengthy proceedings below, we conclude that PCA's neglect was excusable. At the first significant hearing in the case, held on December 7, 1982, the trial court stated unequivocally that the counterclaim was to be severed for a later trial, and indicated that it would not be considered until after the proceedings in foreclosure were completed. Counsel for both sides, under such circumstances, were justified in narrowing their concentration to the matter of foreclosure.

PCA asserted, and the trial court so found, that the reply was overlooked, in part, because PCA concentrated on litigating the summary judgment, foreclosure and confirmation issues. Indeed, the record reveals that this issue was aggressively and attentively litigated by both sides, which litigation involved two appearances before the court of appeals and two attempts to obtain leave to appeal to this court. As a factual matter, it would be fair to conclude that, except for the failure to file the reply at issue, PCA was diligent in the pursuit of this case and very observant of the authority of the court.

Also, following the trial court's grant of summary judgment, new counsel was obtained to represent PCA. On several subsequent occasions, counsel for the Cochrans asserted the need to move to trial on the counterclaim. This would have given newly retained counsel every reason to believe that triable issues had already been established by the pleadings. When questioned upon this very point by the trial court, counsel for the Cochrans stated: "I will be quite frank, Your

Honor, I was not aware that the reply has [*sic*] not been filed." Taken together, these factors demonstrate that the failure to file the responsive pleading was, at worst, an innocent oversight and not one intended to delay or confuse the proceedings.

Also significant is the fact that, although there were affidavits prepared by the Cochrans for use in the summary judgment proceeding, it would appear that the parties had not yet entered into discovery on the counterclaim at the time of PCA's motion to file a reply instanter. Not only were the Cochrans not misled or otherwise induced by any representations of PCA into believing that PCA would do other than oppose the counterclaim, but their position and ability to litigate the issue were not impeded to any degree whatsoever. It can only be concluded, as the trial court so found, that the Cochrans were in no way prejudiced by PCA's delay in filing its reply to their counterclaim.

Finally, and of great importance, is the fact that the Cochrans failed to file their motion for default until after PCA pointed out the lack of a reply in its motion, dated August 20, 1986, for leave to file a reply instanter. In *Evans* v. *Chapman, supra,* we found it significant that no default motion was pending at the time the appellee therein filed a Civ. R. 6(B) motion for leave to file an answer brief instanter. *Id.* at 135, 28 OBR at 231, 502 N.E. 2d at 1016. Although a party is under no obligation to seek a judgment by default upon a counterclaim where no reply thereto has been filed, it cannot be denied that a decision not to seek such a judgment, for whatever reason, weighs in favor of granting leave to reply. Until a motion for default is filed, it is presumed that the complaining party is not entitled to a default judgment, which fact serves to enlarge

the discretion of the trial court to allow a delayed responsive pleading.

Moreover, we find that those authorities cited to the contrary are unpersuasive. *GTE Automatic Electric, supra,* involved neglect which was clearly inexcusable. The only issue for resolution relevant to that point was whether such neglect by the attorney was imputable to the client's case. Other cases are asserted as support for the proposition that the relatively brief delays involved therein ought to be compared to the considerably longer lapse of time in the instant case. The mere fact that four years had elapsed does not, standing alone, preclude a determination of excusable neglect, especially when considerable litigation occurred in the case during that period.

In conclusion upon this issue, it seems beyond dispute that the facts underlying the trial court's decision are most unusual. The trial court was entitled to give weight to those considerations set forth above. On such basis, it was entirely proper to conclude that PCA's neglect was excusable. There was, therefore, no abuse of discretion.

### III

We now consider whether the Cochrans' remaining counterclaim was properly dismissed by the trial court on the pleadings pursuant to PCA's motion based upon the ground that the counterclaim is barred by Ohio's Statute of Frauds. This counterclaim, which is set forth in the recitation of the facts above, sets forth as factual events that PCA had agreed to release the Cochrans from their obligations under the writings as soon as Paul Cochran paid to PCA the proceeds from the sale of fifty thousand bushels of corn. It is then averred that the specified crops were sold and the pro-

ceeds were paid to PCA, who then refused to release the Cochrans from their obligations on the subject notes and mortgage.

From such recitation of the facts, the Cochrans advanced a broad list of legal theories sounding in both tort and contract law, including fraud, fraud in the inducement, deceit, wrongful inducement, reformation, promise to release a mortgage, promissory estoppel, restitution and part performance.

PCA's defense to this counterclaim is that this action is barred by the Statute of Frauds as embodied in R.C. Chapter 1335, particularly R.C. 1335.04 and 1335.05. These state, respectively, in pertinent part as follows:

"No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it * * *."

"No action shall be brought whereby to charge * * * a person * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

R.C. 1335.05 clearly commands that "[n]o action shall be brought" regarding an interest in land unless the agreement upon which it is premised is in writing, and signed by the defendant, in this instance PCA. The Cochrans do not present any such writing which sets forth those terms which they allege were agreed to by PCA. However, they assert that their action, in any event, is not based upon a writing but is, instead, premised upon the fraudulent or otherwise wrongful oral representations allegedly made by PCA, upon which the Cochrans relied in signing the various writings held by PCA. As such, it is argued, they do not assert an action for any interest in land or upon any written agreement. Nevertheless, they do not deny that what they ultimately seek is either a cancellation of the notes and the mortgage held by PCA and signed by them, or such an award of damages as will effect that same result by enabling them to discharge their obligations under such writings. Thus, their counterclaim, being in essence interposed to block enforcement of the writings held by PCA, has as its core object the obviation of that very interest in the land described by such writings.

The law, through application of principles of equity, has refused to allow the Statute of Frauds to be interposed in furtherance of fraud. In reliance on this, the Cochrans assert "that PCA duped * * * [them] into becoming guarantors of their son's * * * debts to PCA," and that "PCA had no intention of releasing the Cochrans from the guaranty" regardless of whether the crop proceeds were paid or not. These acts, they argue, constitute fraud, deceit and/or fraud in the inducement, relying upon *Watson* v. *Erb* (1877), 33 Ohio St. 35; *Newman* v. *Newman* (1921), 103 Ohio St. 230, 133 N.E. 70; and *Tier* v. *Singrey* (1951), 154 Ohio St. 521, 43 O.O. 492, 97 N.E. 2d 20.

A review of these cases demonstrates that, far from supporting the position of the Cochrans, they actually stand for those propositions set forth by PCA. In *Watson* v. *Erb, supra,* the court found as follows:

"The fraud against which equity will grant relief, notwithstanding the

statute of frauds, consists in the refusal to perform an agreement upon the faith of which the plaintiff has been misled to his injury, * * * and not in the mere moral wrong involved in a refusal to perform a contract, which, by reason of the statute of frauds, can not be enforced by [legal] action." *Id.* at paragraph one of the syllabus.

To clarify the difference between the two kinds of wrongs, the court explained further that:

"It must appear that the promise was used as a means of imposition and deceit. If the case taken as a whole is one of fraud, the verbal promise may be received in evidence as one of the steps by which the fraud was accomplished. To deduce the fraud from the [oral] contract and then give effect to the contract on the score of fraud, is reasoning in a circle. The fraud which will give jurisdiction to compel a performance of the parol * * * [agreement] must consist in something more than a mere breach of parol undertaking. * * *" *Id.* at 48.

Both *Newman* and *Tier, supra,* agree with the above language. *Newman, supra,* at 242; *Tier, supra,* at 526-527, 43 O.O. at 495, 97 N.E. 2d at 23. Furthermore, in all these cases, plaintiffs alleged some sort of fraud which they claimed vitiated the statute. Even though there was an unperformed oral promise to convey an interest in land in these cases, this court consistently upheld the application of the Statute of Frauds and refused to enforce the oral promise. Consequently, the Cochrans may not premise fraud upon PCA's mere refusal to honor the alleged parol agreement. This is especially so when what is sought is either direct enforcement of the alleged oral agreement or an indirect enforcement by such an award of damages as would discharge the Cochrans' obligations on the notes and the mortgage.

The Cochrans' next argument is that the above facts constitute fraud in the inducement, which argument represents only a slight shifting of ground from the basic fraud claim. In distinguishing a viable claim of fraud in the inducement from that presented in the instant case, we need only turn to *Newman, supra,* where, at 246, 133 N.E. at 74, this court stated:

"There is general concurrence in the view, which is obviously just and equitable, that if one has been induced to enter into and perform or partly perform an oral agreement concerning an interest in land by fraudulent misrepresentations as to existing conditions, financial ability of a party, or under circumstances which amount to fraud, a court of equity should refuse to let the statute be used as an instrument of fraud or to operate to prevent equitable relief. * * *"

Immediately apparent from the foregoing is the observation that the law will not countenance any and every kind of fraud allegation as capable of overcoming the Statute of Frauds. Whether the alleged misrepresentation is of a promise of future performance or of a then-present fact, it will not defeat the Statute of Frauds unless such fraudulent inducement is premised upon matters which are wholly extrinsic to the writing. The Statute of Frauds may not be overcome by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.

A review of the alleged oral promise at issue, when compared to the writings which were signed by the parties and publicly recorded, demonstrates that the terms of the alleged

oral agreement pertain to the very same subject matter as the terms of the written agreements, and that the terms of the writings directly contradict those of the alleged oral promise. Both the written and the alleged oral agreements clearly and unambiguously assert terms of a mortgage upon the very same parcels of land. Also, both agreements render Wayne and Edna Cochran liable at the very least as guarantors for the indebtedness of Paul and Barbara Cochran. They are, therefore, identical as to subject matter. Beyond this point there is major variance and disagreement.

The written instruments and the alleged oral agreement establish different amounts of money for which the Cochrans are liable. The alleged oral agreement would seem to create liability for an amount equal to the actual sale price of fifty thousand bushels of corn, which was apparently $115,821.18. The written mortgage agreement, on the other hand, was open-ended and states that it was intended to secure all amounts of indebtedness up to $800,000. The writing specifically established that the Cochrans were, at the date of signing, responsible for the two loans recited which were in the amounts of $107,836 and $513,700.

The alleged oral agreement and the written mortgage each establish a different event upon the happening of which the mortgagee's interest in the land is to be extinguished. The purported oral agreement sets the time for discharge as the date of payment by Paul Cochran to PCA of the proceeds of the sale of the corn. This event apparently occurred on April 2, 1982, two months after the default upon the notes was declared. All the writings assert to the contrary, *i.e.*, that there would be no discharge of the indebtedness until the total amount owed was repaid.

Furthermore, the claim that the alleged oral agreement was an inducement for the written mortgage is not reasonably acceptable since, rather than being the inducement for the transaction, the alleged oral agreement is upon the very subject and conditions as contained within the written mortgage agreement and is therefore a mere variation in terms. There is nothing about the parol agreement which is extrinsic to the written agreement; thus, it fails the requirement that the inducement element of a fraudulent inducement claim must relate to matters not within the writing asserted as a defense. Consequently, as a matter of law, such claim cannot withstand the asserted defense of the Statute of Frauds.

The record in this case also reveals that the Cochrans were not unsophisticated in business matters. They were not, as implied by their brief on the merits, mere guarantors of their son's obligations but, instead, appeared to have been involved in rather extensive farming and livestock breeding ventures with him. Wayne Cochran held the position of vice president in the corporation through which he and his son Paul bought, sold and bred livestock. These farming pursuits required a high degree of business sophistication. It would seem unreasonable to assert that the Cochrans were not familiar with the kind and import of the documents at issue. Moreover, nowhere do they assert that they were misled as to the contents of the writings at issue, which they signed and to which it must be presumed, therefore, that they agreed. Their signatures appear, not just on the one mortgage document, but upon a number of other documents, all of which represent in prominently displayed terms that they were to be

liable for all amounts which PCA might advance up to $800,000. The amounts already advanced were also prominently set forth, along with the dates such advances were made.

We therefore hold that when a party voluntarily places his signature upon a note or other writing within the Statute of Frauds, and where that party's sole defense to an action brought upon the writing is that a different set of terms was orally agreed to at that time, such defense shall not be countenanced at law regardless of the theory under which such facts are pled. In such event, the writing alone shall be the sole repository of the terms of the agreement.

Finally, as previously mentioned, this case was dismissed upon the pleadings based upon the Statute of Frauds. The Cochrans contend that a claim such as theirs should not be so dismissed when further discovery into the conduct of PCA would prove the validity of such counterclaim. In circumstances such as those before us, involving a foreclosure and apparently valid writings evidencing the debts owed, consideration of a motion for dismissal at the earliest possible stage is reasonable and in furtherance of judicial economy. The assertion of a counterclaim which is not cognizable at law should not prevent such action from being resolved as expeditiously and inexpensively as the proceedings and concerns for justice permit.

Accordingly, the judgment of the court of appeals is reversed in part and affirmed in part.

*Judgment reversed in part and affirmed in part.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS and WRIGHT, JJ., concur.

KERNS, J., concurs in part and dissents in part.

JOSEPH D. KERNS, J., of the Second Appellate District, sitting for H. BROWN, J.

KERNS, J., concurring in part and dissenting in part.

I concur in the opinion of the majority as it relates to Marion Production Credit Association's motion for leave to file a pleading out of rule and as it relates to the Cochrans' motion for a default judgment. However, even at this late date in the proceedings, I cannot agree that the Cochrans' counterclaim was vulnerable to a belated motion to dismiss.

The only issue of any consequence in this appeal is essentially one of pleading — whether the Statute of Frauds is a complete defense, as a matter of law, to a pleading which alleges fraud in the inducement. In other words, was the counterclaim subject to dismissal upon motion?

In this regard, it appears that substantial case law, both from this and other jurisdictions, is embodied in the following excerpt from 52 Ohio Jurisprudence 3d (1984) 463-464, Section 129:

"Fraud practiced on a guarantor or a surety on the part of the obligee annuls the contract and may be established as a defense to an action on the obligation. Thus, concealment or misrepresentation by the creditor for the purpose of inducing others to become sureties for the debtor will release them from their obligation."

In fact, time has had no compromising effect upon the observation of this court in *Watson v. Erb* (1877), 33 Ohio St. 35, where paragraph one of the syllabus provides as follows:

"The fraud against which equity will grant relief, notwithstanding the statute of frauds, consists in the refusal to perform an agreement upon the faith of which the plaintiff has been

misled to his injury, or the defendant has secured an unconscionable advantage * * *."

The Statute of Frauds was designed to prevent fraud, but not as a vehicle to silence claims of fraud, and the pleading filed by the Cochrans, as quoted in the majority opinion, is sufficient to state a cause of action based upon fraudulent inducement. And it is fundamental, of course, that a pleading is not subject to dismissal for failure to state a claim for relief unless it appears to a certainty that the pleader cannot possibly be entitled to relief under any set of facts which could be proven in support of its allegations.

A fair analysis of the entire record suggests that the Cochrans may encounter substantial difficulty in the pursuit of their claim, but in my opinion, a majority of the court has disposed of this case more "expeditiously" than the law of the land allows. Accordingly, I would affirm the judgment of the court of appeals.