{¶ 16} I concur with the majority opinion on defendants' fourth assignment of error.[1]
 {¶ 17} I dissent, however, with the majority opinion on defendants'.
 {¶ 18} assignments of error one,[2] two[3] and three[4] because it fails to consider the threshold issue of whether the record contains the complete contract in this case. The majority ignores the legal import and effect of the parties' September 29, 1999 settlement agreement and mutual release of claims.
 {¶ 19} A court interprets a contract so that the intent of the parties can be ascertained and given effect. Aultman Hosp.Ass'n. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53,544 N.E.2d 920; Willard Constr. Co. v. City of Olmsted Falls,
Cuyahoga App. No. 81551, 2003-Ohio-3018. The parties' intent "is presumed to reside in the language they chose to employ in the agreement." Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities, Auth., 78 Ohio St.3d 353, 367,1997-Ohio-202, 678 N.E.2d 519, 526. That intent is gleaned from considering the contract as a whole. Id.
 {¶ 20} If the contract is clear and unambiguous, then its interpretation is a matter of law. On appeal, the reviewing court's standard of review is de novo. Nationwide Mut. Fire Ins.Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108,1995-Ohio-214, 652 N.E.2d 684.
 {¶ 21} After reviewing of the trial transcript and the exhibits appended, I agree with defendants that plaintiffs never produced all the controlling documents in this case.
 {¶ 22} The plain language of the Amended Settlement Agreement in the instant case states, in relevant part, as follows:
 {¶ 23} This agreement is intended to amend the original settlement agreement entered into by the parties on or about September 29, 1999.
 {¶ 24} * * *
 {¶ 25} This Agreement and the original Agreement executed on or about September 29, 1999 shall constitute the entire agreement as there are no oral agreements modifying the herein Agreement. (Emphasis added).
 {¶ 26} According to its express terms, the Amended Settlement Agreement does not replace but merely amends; that is, it either adds to or deletes something from the September 29th
document. The Amended Settlement Agreement, therefore, as a complete and binding contract, consists of all the terms set forth in that document (Nov. 15, 1999), along with whatever terms are included in the September 29, 1999 document. The trial record, however, does not include the earlier September 29th
settlement agreement. Nor is there testimony describing the terms of that agreement. Therefore, the Amended Settlement Agreement is only half of the contract controlling this case.
 {¶ 27} Neither the trial court nor the majority can determine the effect of the 1998 Lease document and the terms contained therein, without being able first to review the later September 29, 1999 settlement agreement, along with the Amended Settlement Agreement of November 15.
 {¶ 28} Because plaintiff has failed, as a threshold matter, to produce the entire contract, the trial court erred by finding a breach of contract and entering judgment against defendants. I would therefore sustain defendants' first assignment of error.
 {¶ 29} As to defendants' second assignment of error, I also disagree with the majority opinion, which held that defendant was personally liable for Classic's debts. The majority decision rests on how the signature lines of the contract are construed.
 {¶ 30} This court has explained that:
 {¶ 31} [a] contract is a promise or a set of promises, the breach of which the law provides a remedy, or the performance of which the law in some way recognizes a duty. Ford v. TandyTransp. Inc. (1993), 86 Ohio App. 3d 364, 620 N.E.2d 996, 1006. In order for a party to be bound to a contract, the party must consent to its terms, the contract must be certain and definite, and there must be a meeting of the minds of both parties.Episcopal Retirement Homes, Inc. v. Ohio Dept. Of Indus.Relations (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137;Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos.
(1995), 102 Ohio App.3d 708, 657 N.E.2d 851.
 {¶ 32} Zab v. Goforth, (Sept. 10, 1998), Cuyahoga App. No. 73050, 1998 Ohio App. LEXIS 4225, at *5-6. "The parties must have a distinct and common intention which is communicated by each party to the other." Moore v. Johnson, (Dec. 11, 1997), Franklin App. Nos. 96APE11-1579, 96APE12-1638, and 96APE12-1703, 1997 Ohio App. LEXIS 5603, at *25-26, citing McCarthy, Lebit,Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc. (1993),87 Ohio App.3d 613, 620, 622 N.E.2d 1093.
 {¶ 33} In 1934, the Supreme Court of Ohio ruled:
 {¶ 34} * * * where a promissory note is signed by the proper officer of a corporation in the corporate name, and underneath the corporate name he signs his own name, affixing thereto his appropriate official title as an officer of said corporation, in the absence of anything in the body of the instrument requiring a different construction, such note will be construed and held to be the note of the corporation only, and not the note of the officer so signing, or the joint note of such officer and the corporation.
 {¶ 35} Cannon v. Miller Rubber Products Co. (1934),128 Ohio St. 72, 75-76, citing Aungst v. Creque, 72 Ohio St. 551, syllabus.
 {¶ 36} The face of the agreement's signature page in this case, however, is different from that in Cannon and, therefore, requires a different construction. Here, that page unambiguously includes two separate lines: one for Classic, the corporation, and one for Moore, as an individual. Each of those signature lines has Jerry Moore's signature. "Jerry Moore" is typewritten under the first line. The second line has "Classic Car Auto Body Frame, Inc." typewritten beneath it. Moore signed both lines with his own name and then added in his own hand the word "President" next to both of his signatures.
 {¶ 37} From the form of the document before it was signed, it was plaintiffs' intention for Moore to sign the line above his name, "Jerry Moore," as an individual and thus for Moore to agree in his individual capacity.
 {¶ 38} Moore testified, however, he signed both lines in his corporate capacity as president of Classic because it was not his intention to be held personally liable for Classic's debts to plaintiff. His adding "President" to both lines demonstrates that intent.
 {¶ 39} Defendants have stated, on the other hand, when Moore signed the document twice in the same capacity, he "was attempting in bad faith to circumvent the intent of the agreement without any indication that he was doing so * * * in entering into the settlement agreement." Plaintiffs' appellate brief at 11. Plaintiffs position is unpersuasive in light of its duty to read and accept or reject what Moore signed.
 {¶ 40} Plaintiffs use the November 1999 document as proof of its agreement with defendants. Plaintiffs cannot argue that defendants must be held to the express provisions of that agreement and then simultaneously claim that the document does not demonstrate the parties' intent when it comes to the issue of Moore's personal liability.
 {¶ 41} Plaintiffs' position can be distilled into one claim: the parties had orally agreed that Moore would accept personal liability. The agreement, however, unambiguously contradicts plaintiffs' claim.
 {¶ 42} The purported and conflicting intention of the parties are not relevant to a reading of this particular document (the 1999 Amended Agreement) because in itself it is not ambiguous, although it is incomplete. Because on its face, the signature lines are unambiguous, there is no need to reach to the intent of the parties on that point.
 {¶ 43} Moreover, the agreement expressly states that "there are no oral agreements modifying the herein Agreement." To permit plaintiffs to prevail on their claim of an oral agreement which contradicts the written signed document is a blatant violation of the parol evidence rule. Marion Production Credit Association v.Cochran (1988), 40 Ohio St.3d 265, 533 N.E.2d 325.
 {¶ 44} I would sustain defendants' second assignment of error.
 {¶ 45} I also dissent from the majority opinion on defendants' third assignment of error. The trial court stated it awarded attorney fees "pursuant to the terms of the lease." In determining that plaintiffs are entitled to attorney fees, the trial court again erroneously ignored that it did not have the September 29, 1999 document in evidence. Without the parties' entire contract in evidence, the trial court did not know whether that contract included any terms related to fees. The trial court erred, therefore, in using the 1998 Lease to accept plaintiffs' claim for attorney's fees, because the lower court did not know whether such fees were bargained for by the parties in their later agreement in September 1999.[5] I would sustain defendants' assignment of error three.
[1] "IV. The trial court erred and abused its discretion by failing to grant defendants-appellants' leave to file a counterclaim."
[2] "I. The trial court erred and abused its discretion by admitting into evidence and relying upon Exhibit I."
[3] "II. The trial court erred and abused its discretion by finding that Jerry Moore was personally liable and by rendering a judgment against him."
[4] "III. The trial court erred and abused its discretion by granting attorney fees to plaintiff-appellee."
[5] I note that the Amended Agreement in November does not provide for attorney fees.