[Cite as *Falivene v. Bob Schmitt Homes, Inc.*, 2012-Ohio-259.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96494**

---

## CARL J. FALIVENE, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## BOB SCHMITT HOMES, INC.

DEFENDANT-APPELLEE

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-735867

**BEFORE:** Sweeney, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** January 26, 2012

**ATTORNEYS FOR APPELLANTS**

Shawn W. Maestle, Esq.
John G. Farnan, Esq.
Melanie S. Shaerban, Esq.
Weston Hurd, LLP
The Tower at Erieview
1301 East Ninth Street, Suite 1900
Cleveland, Ohio 44114-1862


**ATTORNEYS FOR APPELLEE**

Mark Fusco, Esq.
Sara Ravas Cooper, Esq.
Walter & Haverfield, LLP
1301 E. Ninth Street, Suite 3500
Cleveland, Ohio 44114

JAMES J. SWEENEY, J.:

{¶ 1}   Appellants, Carl J. Falivene and Denise A. Falivene,[1] appeal from the trial court's orders that granted the following motions filed by defendant-appellee Bob Schmitt Homes, Inc.:   (1) for Plaintiff to elect remedies; (2) to exclude parol evidence; and (3) for summary judgment in its favor on all of appellants' claims. For the reasons that follow, we affirm the trial court's summary judgment order.

---

[1]Referred to in this Opinion as "Carl" and "Denise" individually and the "Falivenes" or appellants collectively.

**{¶ 2}** In July of 1997, appellants purchased a home from Bob Schmitt Homes. On January 28, 1998, appellants and Bob Schmitt Homes entered into an Option Agreement where the parties memorialized certain problems with the home that were "probably * * * induced by a tree/drought phenomenon." The Option Agreement provided that Bob Schmitt Homes would repurchase the property from appellants subject to the specified terms and conditions that were set forth therein. Carl testified during his deposition that he knew and trusted Bob Schmitt and the company's attorney who were his longtime friends. Carl indicated that he read and understood the Option Agreement and even requested certain revisions to it, which Bob Schmitt "gladly did." Carl also testified that he had discussed the Option Agreement with his own attorney but could not remember if his attorney had reviewed the actual document.

**{¶ 3}** Paragraph 6 of the Option Agreement provides:

**{¶ 4}** "<u>TERMINATION</u>. Termination of this Agreement shall automatically occur if SELLERS: a) exercises the Option to sell, and conveys legal title of the property, to BUYER; b) sells the property to a Third Party; c) fails to renew an Option period; or d) allows the property to be encumbered beyond the amount of One Hundred Ninety-Five Thousand Dollars ($195,000.00). Upon termination of the Agreement, the parties shall be released from any and all further liabilities and obligations."

**{¶ 5}** Carl recalled asking Bob Schmitt and the corporate counsel about the above-quoted clause and said he was assured that he could exercise the option as long as the property was not encumbered beyond $195,000.00 at the time he did so. But Carl

also admitted that there is a difference between his understanding of the clause and what is actually written. Neither Bob Schmitt nor the corporate counsel were available to testify in this matter.

{¶ 6} It is undisputed that appellants did encumber the property beyond the $195,000.00 limit sometime in 2005 with a second mortgage. Carl testified that at the time of his deposition less than $180,000.00 was owed on the mortgages.

{¶ 7} The Option Agreement provided for Three Option Periods within which appellants could extend the effective time of the agreement for additional five year periods by paying $1.00 to Bob Schmitt Homes. Appellants sent a check of $2.00 to Bob Schmitt Homes with the intention of extending the Option Agreement for all periods at once. For many years, Bob Schmitt Homes continued to make repairs on the property. Appellants later began dealing with Mike Schmitt who eventually informed them that the company was not in a financial position to continue making repairs.

{¶ 8} Carl said he verbally informed Mike Schmitt that he wanted Bob Schmitt Homes to repurchase the property pursuant to the terms of the Option Agreement. Bob Schmitt Homes refused and appellants commenced this action, alleging breach of contract, fraud and fraudulent inducement, negligent misrepresentation, violations of Ohio's Consumer Sales Practices Act, and promissory estoppel. Appellants sought both monetary damages and specific performance, among other relief.

{¶ 9}  The trial court granted Bob Schmitt Homes' motion for summary judgment as well as certain other motions from which the Falivenes have appealed.  We address the errors together where appropriate for ease of discussion.

{¶ 10} "Assignment of Error No. I: Carl Falivene's testimony regarding the representations made by Bob Schmitt Homes about the meaning of the automatic termination is admissible, and therefore the trial court erred in excluding it."

{¶ 11} "Assignment of Error No. II: Carl Falivene's testimony regarding the representations made by Bob Schmitt Homes about the meaning of the automatic termination provision creates a genuine issue of material fact, and therefore the trial court erred in granting Bob Schmitt Homes' motion for summary judgment."

{¶ 12} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, as follows:

{¶ 13} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and

that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."

{¶ 14} Additionally, the "construction of a written contract is a matter of law" that appellate courts review de novo. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. Ohio courts "presume that the intent of the parties to a contract is within the language used in the written instrument. If [courts] are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." Id.

{¶ 15} "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting, 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4.

{¶ 16} The parol evidence rule does not apply to claims of fraudulent inducement. But, "the parol evidence rule may not be avoided 'by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.' * * * 'a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to

prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit.'" Id. at 29, quoting, *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus and Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 1, 7.

{¶ 17} The Option Agreement included an integration clause indicating that it constituted the "entire Agreement" between the parties. The parties dispute whether the Option Agreement was in force and effect at the time appellants requested Bob Schmitt Homes to repurchase the property.

{¶ 18} Paragraph 6 of the Option Agreement provides:

{¶ 19} "<u>TERMINATION</u>.  Termination of this Agreement shall automatically occur if SELLERS: a) exercises the Option to sell, and conveys legal title of the property, to BUYER; b) sells the property to a Third Party; c) fails to renew an Option period; or d) allows the property to be encumbered beyond the amount of One Hundred Ninety-Five Thousand Dollars ($195,000.00). Upon termination of the Agreement, the parties shall be released from any and all further liabilities and obligations."

{¶ 20} It is not in dispute that appellants encumbered the property beyond $195,000.00 prior to making a demand that Bob Schmitt Homes repurchase the property pursuant to the Option Agreement.  Carl's testimony that he could encumber the property beyond $195,000.00 but still exercise his rights under the Option Agreement at a subsequent time when the property was encumbered in an amount less than $195,000.00

is in direct contradiction to the automatic termination provisions of the agreement. The clear and unambiguous terms of the Option Agreement provide that it automatically terminates if the sellers allow the property to be encumbered beyond $195,000.00. Even Carl acknowledged that what he was allegedly told contradicted what is actually written in the Option Agreement.

{¶ 21} The trial court did not err by granting summary judgment on appellants' claims for breach of contract, negligent misrepresentation, and the Ohio Consumer Sales Practices Act claim. See *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 662 N.E.2d 1074 (parol evidence rule applies to claims of promissory estoppel and negligent misrepresentation that are based on oral promises that directly conflict with the same subject matter as the terms of a written integrated agreement); see, also, *Williams v. Spitzer Autoworld Canton L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410 (the parol evidence rule applies to CSPA claims and bars extrinsic evidence of prior oral representations that contradict the parties' final written contract).

{¶ 22} Appellants contend that Bob Schmitt Homes fraudulently induced them to enter into the Option Agreement. Yet, Carl testified that neither Bob Schmitt nor the corporate counsel did anything fraudulent in his opinion. Appellants instead predicate the fraudulent inducement claim upon Bob Schmitt Homes' refusal to repurchase the property. At that time, Bob Schmitt Homes was being operated by Mike Schmitt who was not present during the execution of the Option Agreement. Because Carl's testimony concerning the automatic termination provisions directly contradicts the plain terms of the

Option Agreement it cannot circumvent the application of the parol evidence rule and the trial court properly granted summary judgment on the fraudulent inducement claim. *Galmish*, supra.

{¶ 23} Carl testified that he read and understood the contract. Even accepting that he did question Bob Schmitt and corporate counsel regarding the automatic termination provisions as they related to encumbering the property, he testified that what is written contradicts what he was allegedly told. Carl could have, and did, request Bob Schmitt Homes to make other revisions to the Option Agreement, which they did. Although appellants rely on *Millersport Hardware, Ltd. v. The Weaver Hardware Co.*, 5th Dist. No. 08-CA-86, 2009-Ohio-6556, the case is not analogous. Unlike in *Millersport*, the parol evidence that appellants seek to introduce here directly contradicts the terms of the Option Agreement. Accordingly, appellants' promissory estoppel claim is not supported by the admissible evidence as a matter of law.

{¶ 24} Appellants' first and second assignments of error are overruled.

{¶ 25} "Assignment of Error III: The Falivenes had seven days to respond to Bob Schmitt Homes' motion for election of remedies, and therefore the trial court erred in granting Bob Schmitt Homes' motion for election of remedies four days after the motion was filed."

{¶ 26} "Assignment of Error IV: Under the facts of this case, specific performance and the payment of money damages are the same and not inconsistent with each other or damages sought for the Falivenes' other claims so as to require the Falivenes to elect a

remedy. Therefore, the trial court erred in granting Bob Schmitt Homes' motion for election of remedies."

{¶ 27} Our disposition of the first and second assignments of error render these assignments of error moot and we decline to address them.

Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR