[Cite as *BookMasters, Inc. v. Reid*, 2013-Ohio-3021.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| BOOKMASTERS, INC. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| RENE REID | : | Case No. 12-COA-034 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No. 09-CVI-470



JUDGMENT:        Affirmed



DATE OF JUDGMENT:        July 10, 2013



APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

BRIAN J. HALLIGAN        DONALD GALLICK
1149 East Main Street        190 North Union Street
P.O. Box 455        Suite 102
Ashland, OH 44805        Akron, OH 44304

*Farmer, J.*

{¶1} Appellant, Rene Reid is an author. On February 8, 2008, appellant entered into an agreement with appellee, BookMasters, Inc., called BookMasters Fulfillment and AtlasBooks Distribution Terms of Agreement. Appellee agreed to provide warehousing, direct to consumer sales support, customer service, credit card processing, and accounts receivable management regarding a book appellant had written. Appellee also agreed, under the name AtlasBooks, to distribute appellant's book to the book trade and facilitate sales. Appellant agreed to pay appellee certain fees for these services.

{¶2} On July 8, 2009, appellee filed a complaint against appellant for money due and owing, seeking $1,131.93 plus interest. Appellant filed an answer and counterclaim, alleging fraud in the inducement, two negligence claims, breach of contract, and detrimental reliance. Appellant's negligence claims were dismissed by the trial court via partial summary judgment on July 25, 2011.

{¶3} A bench trial commenced on March 20, 2012. By decision and judgment entry filed July 12, 2012, the trial court found in favor of appellee as against appellant in the amount of $990.00. The trial court dismissed appellant's three remaining claims.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "THE TRIAL COURT'S JULY 12, 2012 CONCLUSIONS OF LAW ERRONEOUSLY INTERPRETED GALMISH V. CICCHINI, THEREBY COMMITTING REVERSIBLE ERROR BY DISREGARDING ALL TESTIMONY CONCERNING PAROL

EVIDENCE OF APPELLANT'S CAUSE OF ACTION BASED ON FRAUDULENT INDUCEMENT."

II

{¶6}   "THE TRIAL COURT'S JULY 12, 2012 JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS IT FAILED TO FIND THAT BOOKMASTERS BREACHED THE CONTRACT WITH RENE REID."

III

{¶7}   "THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS IT FAILED TO FIND THAT REID PROVED HER CLAIM OF DETRIMENTAL RELIANCE BY A PREPONDERANCE OF THE EVIDENCE."

I

{¶8}   Appellant claims the trial court erred in it interpretation of *Galmish v. Cicchini,* 90 Ohio St.3d 22, 2007-Ohio-7.  We disagree.

{¶9}   In her counterclaim against appellee, appellant alleged fraudulent inducement.  Appellant claimed appellee made certain representations to her that she relied upon before signing the agreement, including the representation that her book could be out in the marketplace in the Spring of 2008.  Appellant claimed she relied on this representation as her book was time sensitive to the 2008 presidential election.  Appellant presented parol evidence via her own testimony to establish her claim.

{¶10} In its decision and judgment entry filed July 12, 2012, the trial court concluded the following at Conclusion of Law No. 4:

Exhibit 4 [BookMasters Fulfillment and AtlasBooks Distribution Terms of Agreement] is a fully, integrated document containing all the material conditions and agreements between the parties. That being said, the parties final written integration of their agreement, Exhibit 4, may not be varied in any way by evidence of other oral or prior written agreements. *Galmish v. Cicchini*, 90 Ohio St.3d 22, 734 N.E.2d 782 (2000).

{¶11} In writing for the court in *Galmish,* Justice Resnick explained the following at 29:

However, the parol evidence rule may not be avoided "by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms." *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus. See, also, *Ed Schory & Sons, Inc., supra,* 75 Ohio St.3d at 440, 662 N.E.2d at 1080.***In other words, "[t]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts

to prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit." Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 1, 7. (Footnote omitted.)

{¶12} Justice Resnick further explained at 30:

However, the parol evidence rule does apply "to such promissory fraud if the evidence in question is offered to show a promise which contradicts an integrated written agreement. Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible." *Alling v. Universal Mfg. Corp.* (1992), 5 Cal.App.4th 1412, 1436, 7 Cal.Rptr.2d 718, 734. By the same token, "if the written contract provides for the doing of an act on a certain condition, the promisee cannot show that the promise was an absolute one merely by claiming fraud, unless he produces some other evidence of the alleged fraud." Annotation, *supra,* 56 A.L.R. at 47-48.

{¶13} The agreement sub judice, signed February 8, 2008, contained the following language:

IV. Terms:

A. Title and Product Information: Publisher [appellant herein] agrees to supply BMI [appellee herein] with proper title information, including proper ISBN, price, cover copy, author information and marketing copy. Publisher agrees to provide this information in accordance with BMI's cataloging and sales schedule, set forth as follows:

1. Spring catalog: Distributed to the trade in January. Complete title information and cover art is required by SEPTEMBER 15th of previous year.

2. First Fall Catalog: Distributed to the trade in June with bonus distribution at Book Expo America. Complete title information and cover art is required by MARCH 1st.

3. Second Fall Catalog: Distribution to the book trade in September. Complete title information and cover art is required by JULY 1st.

\*\*\*

Certain book industry databases may require up to a 180-day lead-time for inclusion and dissemination of Publisher's title information to the book trade. BMI will endeavor to make Publisher's title(s) available to the trade as quickly as possible as dictated by this schedule. However, Publisher acknowledges that BMI is not responsible for title(s) being available through its trading partners sooner than 180 days as dictated by certain Customers.

{¶14} Appellant testified that appellee agreed to "move quickly" to do everything possible to get the book out in Spring 2008, and the 180 day lead-time language included in the agreement was not a problem. T. at 39-42. Prior to signing the agreement, appellant exchanged emails with appellee's account executive, Rod Knieper. Of specific importance is an email from Mr. Knieper dated November 13, 2007 wherein he explained long lead-times and stated appellee was in the process of building the Fall 2008 catalog with a closing date of March 1, 2008. Defendant's Exhibit A. In a reply email sent later that day, appellant acknowledged "[t]his all sounds very clear." Defendant's Exhibit D. In an email sent to appellant on January 28, 2008, Mr. Knieper reiterated the Fall 2008 catalog with a closing date of February 29, 2008 and the need for "lead-time for ordering." Defendant's Exhibit C.

{¶15} The argument advanced by appellant to defeat the parol evidence rule is that the Fall 2008 catalog and the 180 day lead-time language were somehow waived by appellee. Given the language in *Galmish,* we find the proffer of appellant's testimony involved the same contract time limits as in the agreement. We therefore conclude the trial court was correct in its *Galmish* ruling.

{¶16} Even if the proffer of "moving quickly" to get the book out in Spring 2008 is accepted, it falls far short of fraud considering the efforts expended by appellee from March to July of 2008. T. at 131-132, 203-204.

{¶17} Assignment of Error I is denied.

II, III

{¶18} Appellant claims the trial court's decision on her breach of contract and detrimental reliance claims was against the manifest weight of the evidence. We disagree.

{¶19} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶20} Prior to evaluating the evidence presented, we note appellant filed a partial transcript only, including her complete testimony and the direct examinations of Mr. Knieper and Randy McKenzie, appellee's national sales manager, but not their cross-examinations. In *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199 (1980), the Supreme Court of Ohio held the following:

> The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See *State v. Skaggs* (1978), 53 Ohio St.2d 162. This principle is recognized in App.R. 9(B), which provides, in part, that "***the appellant shall in writing order

from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.***." When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm. (Footnote omitted.)

{¶21} The gravamen of appellant's claims was that appellee failed to adequately perform its obligation to "endeavor" to distribute the book, and assurances made to her by Mr. Knieper induced her to sign the agreement.

{¶22} In its conclusions of law, the trial court found the agreement was clear and unambiguous and appellee had fully performed under the agreement. On the detrimental reliance claim, the trial court found there was a failure of proof to establish such reliance.

{¶23} As stated at the outset, given the lack of a complete transcript, we are left with the trial court's findings of fact and the direct examination of Mr. Knieper and Mr. McKenzie and appellant's testimony. We have reviewed the trial court's findings and find the testimony presented corresponds with the findings of fact:

(14) By e-mail sent by Knieper to Reid on Monday, January 28, 2008, Knieper informed Reid that the success of getting the Book into bookstores was a "real challenge" as "about 2% of the titles produced

annually make it to the bookshelf…"  (Defendant's Trial Exhibit C).  T. at 420-424.

(15) On February 8, 2008, Reid, doing business as and on behalf of Quantum Leap, executed two printing contracts with BookMasters, along with the Fulfillment and Distribution Agreement with AtlasBooks.  Reid executed all three agreements on February 8, 2008.  (Plaintiffs Trial Exhibits 2, 3, and 4).  T. at 19-20.

(18) There is no dispute between the parties with respect to either parties' performance under the printing agreements.  Plaintiff's Trial Exhibits 2 and 3.  BookMasters printed the books required by Trial Exhibits 2 and 3, for which Quantum Leap paid manufacturer BookMasters the total sum of $15,909.  T. at 74-75, 109.

(20) Reid, dba Quantum Leap, had almost four (4) months within which to fully read, understand and inquire about the Distribution Agreement (Plaintiffs Trial Exhibit 4 / Defendant's Trial Exhibit H).  Reid conducted due diligence as she discussed the provisions of Plaintiff's Exhibit 4 / Defendant's Exhibit H with BookMasters and with her colleagues in the book world.  T. at 30-32.

(23) The following are some specific provisions to Plaintiff's Exhibit 4 / Defendant's Exhibit H to which Reid agreed under section IV, "Terms:"

a. Reid acknowledged that certain book trade industry databases may require up to 180 days lead time for the inclusion and dissemination of the title information to the book trade.  Reid as Publisher acknowledged

"that BMI [BookMasters] is not responsible for title(s) being available through its trade partners sooner than 180 days as dictated by certain Customers."

b. Under subparagraph (B) of section IV, Reid agreed that she was responsible for "creating consumer demand" for her Book.

c. Subparagraph (R) states that: "All notices and communications will be in writing and duly served if [when] mailed by certified or registered mail."

d. Section IV included a provision styled "Indemnification," as embodied in subsection (U).  The indemnification provision provided, among other things, that Reid "will promptly notify BMI [BookMasters] in writing if it becomes aware of any breach" of BookMasters's obligations thereunder.  (¶ 5 of section (U)).

e. The indemnification provision further states that Reid "agrees not to hold BMI [BookMasters] liable for any lost sales or claims that may arise" from BookMasters's services under the Distribution Agreement.  (¶ of section (U)).  T. at 38-47, 55-56, 372.

(25) BookMasters/AtlasBooks further agreed to establish Reid's Book in key book industry databases, create a webpage for the Book on BookMasters's website, Atlasbooks.com, and to include the Book in AtlasBooks's seasonal trade catalogs.  T. at 131-134, 139-141, 168, 203-204.

(29) Following the printing of the Book, AtlasBooks warehoused the Book, provided direct-to-consumer sales support and customer service, included the Book on the Atlasbooks.com webpage under Reid's webpage, and included the Book in its first Fall catalog. All were done pursuant to BookMasters's/AtlasBooks's Distribution Agreement. T. at 131-134, 139-141, 168, 203-204.

(30) AtlasBooks also included the Book in key industry databases, including Onyx and Amazon, and it presented the Book to various booksellers such as Barnes and Noble, Books-a-Million, Borders, Baker and Taylor and Ingram. T. at 131-134, 139-141, 168, 203-204.

(37) As of July, 2008, AtlasBooks had distributed the Book to the appropriate trade databases and with the trade book sellers required by Plaintiff's Exhibit 4 / Defendant's Exhibit H. T. at 131-134, 139-141, 168, 203-204.

(39) After sending copies of the Book to Barnes and Noble booksellers, AtlasBooks received a letter from the small press department of Barnes and Noble, dated June 24, 2008, where Barnes and Noble declined to add the book to its assortment of books for sale stating that the competition is "fierce" and only those titles with the greatest name recognition, the smartest design, the most aggressive promotion publicity campaigns achieve a significant sales pattern. (Plaintiffs Trial Exhibit 9; Defendant's Trial Exhibit A-4). T. at 131-134, 139-141, 161, 164, 192, 203-204.

(50) No evidence was presented to establish that there was any consumer demand whatsoever for Reid's book. T. at 378.

(51) No evidence was presented to indicate or establish that any action or inaction on the part of BookMasters frustrated or inhibited the purchase or acquisition of Reid's book by ready, willing and able consumers of Reid's book. No evidence was presented to indicate or establish that any potential purchaser was unable to locate and purchase Reid's book due to BookMasters' failure to adequately distribute the same.

{¶24} From a reading of the agreement, we concur with the trial court that the terms contained therein were performed. Appellant's claim of detrimental reliance was based only on her testimony that she believed she was promised the book would get out "more quickly" or in the Spring of 2008 rather than the standard 180 day lead-time as specified in the agreement. T. at 40-41. The evidence also supports the fact that appellant thoroughly vetted the agreement by holding it for four months. T. at 30-32. She was fully aware that it would not be in the Spring 2008 catalog as the deadline was long past and instead it would be in the Fall 2008 catalog. T. at 38-39.

{¶25} Both the testimony of Mr. Knieper and Mr. McKenzie established that various methods were used to push the book ahead of the normal flow, but the marketing of the book was unsuccessful. T at 83-84, 91, 131-134,139-141, 161, 203-204.

{¶26} We conclude appellant presented a different picture of her expectations vis-á-vis the beliefs of Mr. Knieper and Mr. McKenzie. The credibility of the witnesses is

up to the trier of fact, in this case, the trial judge. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶27} We find the record as presented substantiates the trial court's findings and conclusions on appellant's claims.

{¶28} Assignments of Error II and III are denied.

{¶29} The judgment of the Court of Common Pleas of Ashland County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, PJ. and

Wise, J. concur.

_____

_____

_____

JUDGES

SGF/sg 627

[Cite as *BookMasters, Inc. v. Reid*, 2013-Ohio-3021.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT


BOOKMASTERS, INC.                 :

        Plaintiff-Appellee            :

                                            :

-vs-                                   :            JUDGMENT ENTRY

RENE REID                     :

        Defendant-Appellant      :            CASE NO. 12-COA-034


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio is affirmed. Costs to appellant.


_____


_____


_____

JUDGES