COUNTRYWIDE HOME LOANS SERVICING, L.P., et al., Appellees,

v.

STULTZ et al., Appellants.

[Cite as *Countrywide Home Loans Servicing, L.P. v. Stultz*, 161 Ohio App.3d 829, 2005-Ohio-3282.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–1245.

Decided June 28, 2005.

Lerner, Sampson & Rothfuss, Steven L. Sacks, and Thomas L. Henderson, for appellee Countrywide Home Loans Servicing, L.P.

Richard B. Parry, for appellants.

FRENCH, Judge.

{¶ 1} Defendants-appellants, Robert E. and Kathleen M. Stultz, appeal from an order of the Franklin County Court of Common Pleas that granted summary judgment and a decree in foreclosure in favor of plaintiff-appellee, Countrywide Home Loans Servicing, L.P. ("Countrywide"), in this mortgage-foreclosure action.

{¶ 2} The record discloses that, in 1998, appellants entered into an open-end mortgage agreement with Republic Savings Bank for the purchase of a residence located at 4803 Coatbridge Lane in Columbus. The mortgage apparently changed hands several times and, ultimately, was assigned to Countrywide. In the mortgage document, Mr. Stultz is the named mortgagor, with Mrs. Stultz "signing solely to release all dower rights herein." The document, at covenant number 5, provides: "Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property."

{¶ 3} On July 22, 2004, the Stultzes, who allege that they were in the process of moving out, went to the residence to pick up personal items and discovered that the locks had been changed. On July 23, 2004, Countrywide filed a complaint in

foreclosure and for reformation of the mortgage, naming appellants and Sherman Acquisition, L.P., as defendants. The complaint alleged:

1. Plaintiff is the holder and owner of a note, a copy of which is not available at this time. By reason of default under the terms of the note and the mortgage securing same, plaintiff has declared the debt evidenced by said note due, and there is due thereon from the defendant, Robert E. Stultz, $121,959.21, together with interest at the rate of 7.00% per year from September 1, 2003, plus court costs, advances, and other charges, as allowed by law.

* * *

2. Plaintiff * * * is the holder of a mortgage * * * given to secure payment of the above-described note, and said mortgage constitutes a valid first lien upon the real estate described therein.

3. The mortgage was filed for record on December 17, 1998[;] * * * it was subsequently assigned to the plaintiff herein. The conditions of defeasance contained therein have been broken, and plaintiff is entitled to have said mortgage foreclosed. * * *

4. Plaintiff says that the defendant, Kathleen M. Stultz, may claim an interest in the subject property by virtue of being a current titleholder thereof.

5. Plaintiff says that the defendant, Sherman Acquisition, L.P., may claim an interest in the above described property by virtue of a mortgage from Robert E. Stultz and Kathleen M. Stultz * * *.

* * *

6. Plaintiff * * * further says that as the result of a scrivener's error and mutual mistake of fact between the parties thereto, the mortgage executed by the defendant-titleholders, Robert E. Stultz and Kathleen M. Stultz, and delivered by them to plaintiff's predecessor in interest only listed "Robert E. Stultz, a married man" in the Granting Clause of said mortgage.

7. Plaintiff says that the mortgage contains a further error in that it states that Kathleen M. Stultz is signing the mortgage for purposes of releasing dower only.

8. The parties intended that the mortgage from Robert E. Stultz and Kathleen M. Stultz would secure a valid first lien upon the fee simple of the premises and plaintiff's predecessor in interest would not have granted or permitted a disbursement of funds to Robert E. Stultz if it had known that it would acquire a mortgage against only one-half of the real estate.

9. Because these mistakes were the result of a scrivener's error and mutual mistake of fact between the parties to said document, plaintiff is entitled to have the above described mortgage reformed to properly state "Robert E. Stultz and Kathleen M. Stultz, Husband and Wife" in the Granting and

Acknowledgment Clauses. Plaintiff is further entitled to an order of this Court decreeing the property as described in Plaintiff's mortgage be sold at sheriff's sale.

WHEREFORE, plaintiff prays for a judgment against defendant, Robert E. Stultz, in the amount of $121,959.21, together with interest at the rate of 7.00% per year from September 1, 2003, plus court costs, advances, and other charges, as allowed by law; that plaintiff's mortgage be adjudged a valid first lien upon the real estate described herein, and that said mortgage be foreclosed; that said real property be ordered sold, and that plaintiff be paid out of the proceeds of such sale; for such other relief, legal and equitable, as may be proper and necessary; and that all the other defendants herein be required to set up their liens or interests in said real estate or be forever barred from asserting same.

{¶ 4} On August 19, 2004, Mr. Stultz filed an answer in which he admitted being the owner of the referenced real property but stated he was "without sufficient information to admit or deny the remaining allegations of plaintiff's complaint." Mr. Stultz additionally asserted that he was entitled to set off any recoupment in an amount to be determined by discovery; that Countrywide's complaint was barred by waiver, estoppel, unclean hands, and laches; that Countrywide had failed to state a cause of action against him; and that Countrywide had failed to mitigate damages or join indispensable parties. Finally, Mr. Stultz asserted that he had "insufficient information whether there may be other affirmative defenses or counterclaims available, and reserves the right to assert them, if appropriate per discovery." On August 27, 2004, appellants filed a motion for leave to file an amended answer and compulsory counterclaims, to which they attached an answer alleging all of the defenses in Mr. Stultz's original but which also admitted that Mrs. Stultz is a "clear titleholder to the property." [1] Appellants additionally denied the presence of scrivener's error and asserted that the mortgage was drafted by Countrywide and is a contract of adhesion that must be strictly construed against Countrywide. Appellants' counterclaims asserted:

11. On or about July 22nd 2004, while Defendants were in possession of the property which is the subject of this foreclosure action, Plaintiff did, without consent of Defendants, enter upon the premises, change the locks, and deprive Defendants of their real property valued at * * * $175,000.00 * * * and personal property valued at * * * $30,000.00 * * *, in spite of protests by Defendants.

---

1. We note that, although appellants filed a motion for leave to amend, the amended answer appears to have met Civ.R. 15(A)'s requirements for a pleading that may be amended without leave of court.

{¶ 5} Based upon this factual allegation, the counterclaims asserted causes of action for trespass and conversion, and sought damages in an amount in excess of $25,000, along with punitive damages.

{¶ 6} On September 30, 2004, appellee moved for summary judgment on the basis that appellants' answer had failed to raise defenses and operative facts sufficient to establish a genuine issue for trial. Regarding appellants' assertion that appellee had deprived the Stultzes of access to the premises, appellee stated:

> Defendant's allegations in Amended Answer are moot as defendant has been provided with a key to enter the property. Plaintiff has been advised that the property had been abandoned and in order to protect its interest in the property, plaintiff secured the premises and changed the locks. Plaintiff did not remove any items from the premises.

{¶ 7} Appellants' memorandum contra the motion for summary judgment, filed October 15, 2004, countered that appellants had not had sufficient time to complete discovery, asserting that appellants may have been the victim of predatory lending practices for which they would be entitled to a remedy and, without further discovery, would be prevented from pursuing this defense. Appellants additionally maintained that their counterclaims were not defeated by evidence that Countrywide had eventually permitted them access to the residence in order to retrieve personal property and that, if Countrywide's changing the locks was deemed tortious, appellants would be entitled to damages. Affidavits of both Mr. and Mrs. Stultz were attached to the memorandum. These affidavits focused upon the Stultzes' concern over Countrywide's changing the locks, indicating that they learned that they were locked out on July 22, 2004, and, as of the date of the affidavits, August 26, 2004, they were still locked out. On October 18, 2004, Countrywide filed a motion for default judgment and decree in foreclosure against defendants Mrs. Stultz and Sherman Acquisition on the basis that they had never filed an answer.

{¶ 8} On October 19, 2004, appellants moved for a continuance, supported by an affidavit of counsel, again asserting they needed more time to complete discovery in order to support their defenses. Appellants' motion stated:

> Plaintiff states in its MOTION OF PLAINTIFF, COUNTRYWIDE HOME LOANS SERVICING L.P. FOR SUMMARY JUDGMENT page 2, that "... plaintiff has been advised that the property had been abandoned ... [,"] but offers no evidence of any such by affidavit or in any other manner, as required by Ohio Rule of Civil Procedure 56, and offers no law indicating that such action would constitute an affirmative defense to the torts of trespass and conversion.
>
> Mr. and Mrs. Stultz are, under Ohio law, joint tenants with rights of survivorship regarding the real property which is the subject of this action.

Mrs. Stultz never agreed to a mortgage of her fractional interest in the property, but simply signed away her dower rights. As a result, plaintiff's improper in attempting a foreclosure against her and her fractional share. [sic] * * *

WHEREFORE, defendants request a continuance in accordance with Civil Rule 56(F) regarding the plaintiff's motion for summary judgment in order to complete discovery.

{¶ 9} On October 26, 2004, the trial court granted summary judgment and decree in foreclosure in favor of Countrywide, determining that Mrs. Stultz's signing of the mortgage and note as "releasing dower only" was a scrivener's error and ordering a reformation of the mortgage to reflect that the mortgage was to "Robert E. Stultz and Kathleen M. Stultz, Husband and Wife." The court additionally found that Mrs. Stultz and Sherman Acquisition were in default for failing to appear or answer the complaint. Concluding that the allegations in the complaint were true, the court held there were no genuine issues of material fact and that appellants owed Countrywide the principal balance of $121,959.21 plus interest, in addition to costs. The court's decision did not reference appellants' counterclaims regarding trespass and conversion or mention the lockout issue in any manner.

{¶ 10} Appellants now assign the following as error:

I. The trial court erred in granting plaintiff's motion for summary judgment.

II. The trial court erred by not granting a continuance to defendants so that discovery could be obtained.

{¶ 11} By their first assignment of error, appellants claim that the court should not have granted summary judgment because they raised a genuine issue of material fact whether Countrywide could be liable for locking them out of their home without any notice and in violation of the mortgage agreement. Thus, this assignment focuses solely upon the causes of action raised in their counterclaims set forth in their amended answer, which the trial court never allowed appellants to file.

{¶ 12} The trial court never addressed this argument, and so it is not ripe for our review. See, e.g., *State ex rel. Ohio Civ. Serv. Employees Assn., AFSCME, Local 11, AFL–CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, at ¶ 10 (reviewing courts ordinarily do not consider questions not presented to the court whose judgment is sought to be reversed). Thus, we overrule appellants' first assignment of error.

{¶ 13} Appellants' second assignment of error charges that the trial court erred in refusing a continuance so that they could obtain discovery. Appellants

additionally assert that appellee did not respond to any discovery requests, so that appellants were limited to their own personal knowledge of the facts.

{¶ 14} The decision whether to grant or deny a continuance is within the sound discretion of the trial court and should not be reversed on appeal absent an abuse of that discretion. *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. The circumstances present in each case should be considered in determining whether a trial court abuses its discretion in denying a motion for continuance. *Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921. The reviewing court must apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party. *Burton v. Burton* (1999), 132 Ohio App.3d 473, 476, 725 N.E.2d 359, citing *Unger,* 67 Ohio St.2d at 67–68, 21 O.O.3d 41, 423 N.E.2d 1078. The trial court must consider the length of the delay requested; whether previous continuances have been granted; the inconvenience to the parties, witnesses, attorneys, and the court; whether the request is reasonable or purposeful and contrived to merely delay the proceedings; and whether the movant contributed to the circumstances giving rise to the request. Id.

{¶ 15} Civ.R. 56(F) provides:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 16} Here, less than three weeks after Countrywide filed its summary judgment motion, appellants moved for a continuance so that they could obtain discovery in order to oppose the motion. However, only a week after the motion for continuance, and less than two weeks after the summary judgment motion, the court abruptly granted summary judgment without reference to appellants' motion for continuance, the defenses raised in Mr. Stultz's answer, or the causes of action asserted in their counterclaims. The court's refusal to grant the continuance resulted in appellants' inability to effectively counter the motion for summary judgment and also prevented them from obtaining evidence that may have supported the defenses raised in Mr. Stultz's original answer and the causes of action alleged in their counterclaims.

{¶ 17} Pursuant to Civ.R. 56(C), appellants were entitled to have the evidence construed most strongly in their favor, and summary judgment was appropriate only if it appeared that reasonable minds could conclude only that appellee was entitled to judgment as a matter of law. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. By precluding appellants from obtaining discovery, the court limited itself to consideration of the facts as they appeared in Countrywide's complaint, attached documents, and related pleadings. Obviously, if a nonmovant is denied a reasonable request for time to gather evidence that would allow him to establish a genuine issue of material fact, he will be unable to challenge the motion. Given the relatively short period of time between the filing of the summary judgment motion and the request for a continuance, the fact that the parties disagreed on at least two material issues of fact (the reasonability of the lock-out and the basis for finding a scrivener's error), and the fact that the court appeared not to have considered appellants' answer, the court's refusal to grant appellants' motion for continuance was unreasonable and, therefore, an abuse of discretion. Considering these facts in light of *Ungar* and related cases, we find that the court erred in refusing to grant appellants a continuance.

{¶ 18} We also find that the court erred in granting summary judgment without allowing appellants a meaningful opportunity to assert their trespass and conversion counterclaims. Pursuant to Civ.R. 13(A), to constitute a compulsory counterclaim, the claim must exist at the time the pleading is served and must arise out of the transaction or occurrence that is the subject matter of the opposing claim. See *Rettig Ent., Inc. v. Koehler* (1994), 68 Ohio St.3d 274, 626 N.E.2d 99. If not asserted in the original lawsuit, res judicata will bar a compulsory counterclaim once the original action reaches a final judgment. Id.; *Rader v. N. Ohio Prod. Credit* (Aug. 20, 1991), Seneca App. No. 13–90–17, 1991 WL 217706; *Lewis v. Sabina Bank* (June 16, 1997), Clinton App. No. CA96–10–019, 1997 WL 327584.

{¶ 19} In *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 270, 533 N.E.2d 325, the Ohio Supreme Court held that it was error for the trial court to allow a foreclosure and subsequent sale of the mortgaged premises prior to complete disposition of a pending counterclaim. The court stated:

> In an action upon a note secured by a mortgage, the defendant is entitled to interpose all counterclaims and defenses he may have against the creditor. Civ.R. 13(A) and (B). See, also, *Pierce v. Tiersch* (1883), 40 Ohio St. 168 [1883 WL 69], paragraph one of the syllabus; *Allen v. Shackelton* (1864), 15 Ohio St. 145 [1864 WL 14], at paragraph one of the syllabus. In this regard, trial courts are imbued with authority to hold separate trials upon "any claim, cross-claim, counterclaim, or third party claim * * *." Civ.R. 42(B). However, whenever

the court orders such separate trials on separate issues, the execution of all *judgments* determined upon a single claim should be stayed pending a final determination of the entire action as to all parties. Civ.R. 13(I) read in conjunction with Civ.R. 54(B), 56(D) and 62(E).

It is reasonably well-settled in Ohio that a court which has before it both a claim and a counterclaim cannot enter a final judgment in favor of either party until both claims have been determined. At that time, the amount of damages due to the party having the greater injury shall be reduced by the amount of damages suffered by the party having the lesser injury. *Gordon v. Steinmetz* (1905), 71 Ohio St. 372, 73 N.E. 512, * * * at paragraphs one and two of the syllabus; *Tipton v. Tipton's Admr.* (1892), 49 Ohio St. 364, 30 N.E. 826, * * *. In a foreclosure proceeding such final judgment will determine the rights of all the parties in the premises sought to be foreclosed upon. See *Benson's Admr. v. Stein* (1878), 34 Ohio St. 294 [1878 WL 32], paragraph one of the syllabus. And where the mortgagor's damages ultimately exceed those of the mortgagee, the mortgagee's right to recover the premises is defeated.

(Emphasis sic.)

 {¶ 20} Thus, a court errs in ordering foreclosure and subsequent sale prior to complete disposition of a pending counterclaim, although a court may bifurcate a foreclosure and a counterclaim where the record reflects that the mortgagor would not be substantially harmed in the process. *Sky Bank v. Heckathorn*, Wood App. No. WD–03–016, 2003-Ohio-5202, 2003 WL 22234311, distinguishing *Marion Prod.* Although we are aware of no other case involving tortious claims arising out of a pre-foreclosure lockout, several cases have determined that actions for intentional infliction of emotional distress, breach of a mortgage contract, breach of fiduciary duty, failure to protect and preserve premises, trespass, conversion, and fraud, where directly related to a foreclosure action, were all compulsory counterclaims. See *Rader; Lewis; Sky Bank; Dyer v. Hellkamp* (Apr. 9, 1986), Hamilton App. No. C–850387, 1986 WL 4230.

{¶ 21} Given that appellants' trespass and conversion allegations were (1) properly raised, (2) compulsory counterclaims, and (3) likely to have been dismissed as improperly raised had they attempted to raise them in a separate lawsuit, the trial court erred in ignoring these claims when it granted summary judgment. By alleging that appellee entered the premises at least a day before filing its foreclosure action, and by indicating by affidavit that appellants were denied access to their personal belongings for at least a full month, appellants raised an issue of whether Countrywide would be liable for damages for trespass and conversion. There was also a question of fact whether appellants had abandoned the house, as Countrywide claimed, or whether appellants were, as they claimed, just in the process of moving.

{¶ 22} In addition, at least one appellate court has determined that a trial court's granting of summary judgment in a foreclosure action is not a final, appealable order where a compulsory counterclaim remains unadjudicated. In *Harness v. D. Jamison & Assoc.* (June 25, 1997), Hamilton App. No. C–960735, 1997 WL 346053, the First District Court of Appeals addressed a foreclosure action in which the defendant counterclaimed for an accounting of debts on the basis that an ongoing business relationship between the mortgagee and mortgagor resulted in debts that would have offset the mortgage debt. After the trial court granted summary judgment in favor of the plaintiff and certified that there was "no just reason for delay" under Civ.R. 54(B), the defendant appealed. Determining that these facts did not permit the court to ignore the counterclaim while still rendering final judgment, the court stated:

> Even if [the defendant] does not dispute his default on the notes and mortgages in the foreclosure action, he asserts a claim against [the plaintiff] that, if proven, may offset the debt he himself owes. Given this set of operative facts, we cannot see how anything other than a complete adjudication of all claims of indebtedness between the two parties would facilitate the interests of both judicial economy and justice. * * * Therefore, we hold that the issues presented in the foreclosure claim and the counterclaim are inextricably intertwined and should be fully litigated before this court assumes jurisdiction.

{¶ 23} Under similar facts, our own court concluded that the failure of the trial court to decide the counterclaim at the time it entered a final judgment of foreclosure required reversal of the trial court's judgment, rather than dismissal of the appeal. In *Bank One, Columbus, N.A. v. Lucas* (June 30, 1986), Franklin App. No. 85AP–418, 1986 WL 7493, this court stated:

> [I]t is clear from the judgment entry that the trial court did not adjudicate the affirmative counterclaims of defendant * * *.
>
> Although not expressly so stated, this assignment of error raises the issue of the propriety of the trial court's determination of no just reason for delay in entering final judgment of foreclosure so as to make judgment upon that claim final and appealable pursuant to Civ.R. 54(B) prior to the determination of the counterclaims of defendant * * *. Under such circumstances, the judgment is reviewable not only as to error in the granting of the judgment but also upon the determination of no reason for delay. * * * Plaintiff contends that there was a complete failure of proof regarding the counterclaims and, thus, no prejudice. We disagree. Construing the evidence most strongly in favor of defendant * * *, sufficient evidence was adduced from which the trial court could find for defendant * * * upon one or more of her counterclaims.

Finding the defendant's counterclaims had raised issues that should have been resolved prior to the trial court's issuing final judgment, we thus reversed and remanded the matter.

{¶ 24} In the case currently before us, we follow this court's precedent in finding that the court erred by failing to consider appellants' counterclaims prior to rendering summary judgment. Appellants' counterclaims at least raised issues that required further probing, if not ultimate denial of Countrywide's motion for summary judgment.

{¶ 25} In reaching this conclusion, we acknowledge that appellants have not raised for our consideration the question whether the evidence regarding the scrivener's error was sufficient for summary-judgment purposes. In *State v. Peagler* (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489, the court confirmed the basic rule that "an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." The court also held, at paragraph one of the syllabus:

> While an appellate court may decide an issue on grounds different from those determined by the trial court, the evidentiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof.

{¶ 26} Here, given the court's refusal to grant a continuance, appellants had little time to raise any issues adequate for this court to determine de novo whether the court had evidence sufficient to conclude that no factual issues remained as to the scrivener's error. Thus, for all of the above reasons, we must sustain appellants' second assignment of error.

{¶ 27} Based upon these considerations, we overrule appellants' first assignment of error, sustain appellants' second assignment of error, and reverse and remand this matter to the Franklin County Court of Common Pleas.

Judgment reversed
and cause remanded.

BROWN, P.J., and BRYANT, J., concur.