[Cite as *Royal Oaks Landmark, L.L.C. v. Royal Oak Cal, L.L.C.*, 2022-Ohio-1144.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| ROYAL OAKS LANDMARK, LLC, | : | |
| Appellee, | : | CASE NO. CA2021-06-025 |
| | : | O P I N I O N |
| - vs - | | 4/4/2022 |
| | : | |
| ROYAL OAK CAL, LLC, et al., | : | |
| Appellant, | : | |
| - vs - | | |
| CALTEX MANAGEMENT LLC., | | |
| Third-Party Defendant. | | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020 CVE 00452

Statman, Harris & Eyrich, LLC, and William B. Fecher, for appellant.

Pickrel, Schaeffer & Ebeling Co., LPA, and Matthew C. Sorg and James I. Weprin, for appellees.

Cors & Bassett, LLC, and Curtis L. Cornett and Alison M. Huenefeld, urging affirmance for amicus curiae Mac Lenders I, LLC.

**PIPER, P.J.**

{¶1}   Appellant, Royal Oak Cal, LLC ("Royal Oak"), appeals a decision from the

Clermont County Court of Common Pleas ordering the distribution of sale proceeds following a sheriff's sale. For the reasons detailed below, we affirm the trial court's decision.

{¶2} This appeal arose out of a land installment contract entered into between Royal Oaks Landmark, LLC ("Plaintiff") and Royal Oak for real property ("Property") consisting of 40 units of an apartment complex in Pierce Township, Clermont County, Ohio. The land contract was executed on March 28, 2013, for a total purchase price of $1,200,000. Royal Oak tendered $200,000 as a down payment at closing followed by monthly installment payments.

{¶3} As relevant here, MAC Lenders I, LLC ("MAC Lenders") held a mortgage on the Property, which Plaintiff was obligated to remit mortgage payments. Plaintiff initiated this foreclosure action on May 21, 2020, alleging that Royal Oak defaulted on its monthly installment payment and had breached the terms of the land contract by wrongfully assigning its interest to a third-party, Caltex Management, LLC ("Caltex"). Plaintiff named the interested parties, Royal Oak, Caltex, MAC Lenders, and the Clermont County Treasurer as party defendants. Plaintiff claimed damages in the amount of $922,201.20, plus interest.

{¶4} On June 18, 2020, MAC Lenders filed its answer and asserted its interest in the Property, demanding that its mortgage be fully satisfied before granting relief to any other party and requesting that Royal Oak be barred from asserting any right, title, or interest in the Property.

{¶5} On July 29, 2020, Royal Oak filed its answer along with a counterclaim against Plaintiff for unjust enrichment, quantum meruit, and fraudulent misrepresentation. It also named Caltex in a third-party complaint.[1] The counterclaim alleged, among other things,

---

1. Caltex was found to be in default. On June 1, 2021, Royal Oak dismissed their third-party complaint against Caltex.

- 2 -

that Plaintiff failed to deliver the premises in market-ready condition and failed to comply with statutory provisions in R.C. Chapter 5312. On August 19, 2020, Plaintiff answered Royal Oak's counterclaim denying the allegations.

{¶6} On September 4, 2020, Plaintiff moved for summary judgment. Royal Oak opposed the summary judgment motion but admitted to the nonpayment of the land contract. It did not dispute the amount of the default. It presented no argument concerning its counterclaim, nor any indication that foreclosure was inappropriate at that time due to its pending counterclaims. Royal Oak instead opposed summary judgment on the basis that Plaintiff was not entitled to a deficiency judgment. In its reply, Plaintiff countered Royal Oak's argument by denying any intention of seeking a deficiency judgment.

{¶7} On October 30, 2020, the trial court granted Plaintiff's motion for summary judgment and ordered the foreclosure of the Property. The trial court ordered that the Property be sold at a sheriff's sale. Upon confirmation of the sale, the trial court ordered distribution of proceeds in the following order of priority:

> 1. To the Clerk of this Court, the costs of this action, including the fees of the appraisers;
>
> 2. To the Treasurer of this County, taxes and assessments due and payable as of the date of transfer of the property after Sheriff's sale;
>
> 3. To [MAC Lenders], any and all actual proceeds received pursuant to the Sheriff's sale, in lieu of or over and above the credit bid, if any, up to the sum of $1,040,277.74 due and owing to [MAC Lenders], along with interest accruing at a rate of 14% per annum from October 31, 2020 and fees accruing at a rate of 1% per quarter;
>
> 4. To [Plaintiff], all amounts paid at the Sheriff's sale above and beyond the amounts due to defendant [MAC Lenders] pursuant to the Mortgages, up to the sum of $911,412.46 with interest at a rate of 6.10% per annum from March 1, 2018 plus $30,622.58 until paid in full, plus court costs, advances and other charges, as allowed by law on its Land Contract.

\* \* \*

The trial court's entry contained Civ.R. 54(B) language stating there was "no just reason for delay."

**{¶8}** Royal Oak did not appeal the trial court's decision, nor did it seek to stay enforcement of the foreclosure order through the sale of the Property.[2] On December 21, 2020, Plaintiff's counsel filed a notice of sale and advised the parties that the sale was scheduled for January 5, 2021. The Property was appraised for $700,000. On January 5, 2021, the Property was sold to the highest bidder for the sum of $1,621,700.

**{¶9}** The Sheriff's return was filed on January 6, 2021, confirming the sale of the Property to an individual named Heather Richmond. On February 5, 2021, Richmond filed notice with the trial court that she had assigned her interest to another corporation, Royal Oaks on the Green, LLC.

**{¶10}** On February 19, 2021, Royal Oak filed a motion to disburse funds alleging that the priority lienholders had been paid. Therefore, Royal Oak sought a court order to "release the excess funds in the amount of $445,614.02." Despite its assertion, the record reflects that Plaintiff had not been paid the $911,412.46 it was owed pursuant to the foreclosure order.

**{¶11}** On March 1, 2021, the trial court entered a journal entry confirming sale, ordering deed, and distributing sale proceeds. The trial court's entry ordered the distribution of proceeds to the clerk, the treasurer, the recorder, the auditor, and MAC Lenders. The trial court distributed a portion of the proceeds to Plaintiff but ordered the balance of $445,614.02 be held by the clerk for resolution of Royal Oak's motion to disburse.

**{¶12}** On March 15, 2021, Plaintiff filed an objection to Royal Oak's motion to

---

2. During oral argument Royal Oak's counsel stated that it supported the decision to sell the Property at the time.

disburse funds.  In the objection, Plaintiff noted it was a priority lienholder according to the court's foreclosure order in the amount of $911,412.46 with interest.  Therefore, Plaintiff argued that Royal Oak's claim was misguided because there were no excess funds, and it was apparent the remaining funds were insufficient to fully satisfy Plaintiff's priority lien.

{¶13}  On March 22, 2021, the trial court entered its second amended journal entry confirming sale, ordering deed, and distributing sale proceeds.[3]  On March 26, 2021, Royal Oak's counsel again opposed Plaintiff's request to distribute funds.

{¶14}  The parties appeared for a hearing on the motion to disburse funds.  During the hearing, Royal Oak's counsel argued that it should be entitled to the remaining funds on equitable grounds.  Royal Oak's counsel acknowledged that it had not appealed the foreclosure order but called it an "unseen, unapproved judgment."  Notably, Royal Oak did not raise the argument that the foreclosure order was not a final appealable order.  Royal Oak's counsel stated:

> So my position is - - without waiving it, is that equitably this Court should do what is right, and that is prevent the windfall.  All right. Whether the unseen, unapproved judgment entry of late October of 2020 was appealed, we know it wasn't.  And that is what it is.  And I can't unring that bell, Your Honor.  However, the whole nature of the General Assembly, and the statute in question, support the judgment debtor in this.  So I know his distinction is, well, there's no excess funds.  There absolutely is excess funds.  Otherwise, they would have a double windfall.

{¶15}  On June 2, 2021, the trial court entered its decision denying Royal Oak's motion to disburse funds and instead awarded the remaining sale proceeds to Plaintiff. The trial court noted that its foreclosure order setting the priorities of the lienholders order was a final appealable order.  Since Plaintiff had the next priority interest, it was entitled to the

---

3. The second amended judgment entry removed Plaintiff's distribution contained in the prior orders, included an additional payment of unpaid real estate tax penalties, and ordered the remaining $508,185.39 be held by the clerk until further order of the court.

distribution. In so doing, the trial court found the "time for raising" additional arguments had passed. Royal Oak now appeals the trial court's decision, raising two assignments of error for review.

{¶16} Assignment of Error No. 1:

{¶17} THE TRIAL COURT ERRED IN FINDING THAT ITS OCTOBER 30, 2020 "FINAL JUDGMENT ENTRY" CONSTITUTED A FINAL APPEALABLE ORDER.

{¶18} In its first assignment of error, Royal Oak argues the trial court erred when it determined that its foreclosure order was a final appealable order.

**Foreclosure**

{¶19} It is well established that "[f]oreclosure actions proceed in two stages, both of which end in a final, appealable judgment: the order of foreclosure and the confirmation of sale. *Farmers State Bank v. Sponaugle*, 157 Ohio St.3d 151, 2019-Ohio-2518, ¶ 18. The order of foreclosure determines the extent of each lienholder's interest, sets out the priority of the liens, determines the other rights and responsibilities of each party, and orders the property to be sold by sheriff's sale. *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, ¶ 39; R.C. 2323.07. On appeal, parties may challenge the court's decision to grant the decree of foreclosure. *Id.* Once the foreclosure decree is final and upon completion of the appeals process, the rights and responsibilities of the parties under the foreclosure decree may no longer be challenged. *Id.*

**Confirmation of sale**

{¶20} The confirmation of sale is an ancillary proceeding limited to whether the sheriff's sale conformed to law. *Sponaugle* at ¶ 19. If the trial court, after examining the proceedings, finds that the sale conformed with R.C. 2329.01 through 2329.61, inclusive, then the court enters an order confirming the sale and orders the dispersal of the proceeds. R.C. 2329.31. An appeal of the confirmation of sale is limited to challenging the

confirmation order itself and to issues related to confirmation proceedings — for example, computation of the final total amount owed by the mortgagor, accrued interest, and amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance. *Sponaugle* at ¶ 19.

{¶21} "The issues appealed from confirmation are wholly distinct from the issues appealed from the order of foreclosure." *Roznowski* at ¶ 40. "In other words, if the parties appeal the confirmation proceedings, they do not get a second bite of the apple, but a first bite of a different fruit." *Id.* The trial court's decision to confirm a sheriff's sale of property will not be reversed absent an abuse of discretion. *Sponaugle* at ¶ 19.

### Procedural History

{¶22} In the present case, the trial court granted Plaintiff's motion for summary judgment and entered an order of foreclosure on October 30, 2020. Among other things, the foreclosure order determined the applicable interests, set the priority of the liens, and ordered the Property be sold by sheriff's sale. As relevant here, MAC Lenders was listed as the third-in-priority lienholder up to its interest of $1,040,277.74 plus interest and Plaintiff was listed as the fourth-in-priority lienholder up to its interest of $911,412.46 plus interest. The trial court did not address Royal Oak's counterclaim at that time. The trial court's foreclosure order contained Civ.R. 54(B) language.

{¶23} It is undisputed that Royal Oak did not appeal from that decision. It is further undisputed that Royal Oak failed to seek a stay of the trial court's judgment. Instead, the matter proceeded to a Sheriff's sale where the Property was sold to the highest bidder for $1,621,700.

### Trial Court

{¶24} After the sale, the trial court entered journal entries confirming sale, ordering deed, and distributing sale proceeds. The trial court distributed the funds according to the

foreclosure order. The trial court confirmed distributions to the County and MAC Lenders according to their respective priorities. Despite Plaintiff being the next priority, Royal Oak claimed there were excess funds and demanded distribution for itself.

{¶25} Following briefing, the trial court found that Plaintiff held a priority lien over Royal Oak up to $911,412.46 and therefore was entitled to the remaining balance. The trial court's entry concluded:

> There is no dispute that the Court's Final Judgment Entry, filed October 30, 2020, constitutes an order of foreclosure. The entry sets out the priority of the liens, it determines the rights, responsibilities and liabilities of the parties, and it orders the property to be sold by sheriff's sale. As such, it was a final, appealable order. The Final Judgment Entry is the controlling document regarding the distribution of the sale proceeds. It orders the proceeds of the sale to be distributed in the following, specific priority of order: 1) the Clerk of Court; 2) the County Treasurer, 3) the mortgage holder, Mac Lenders I, LLC ("MAC Lenders") and; 4) [Plaintiff]. The Final Judgment Entry states that Landmark is entitled to "all amounts paid at the Sheriff's sale above and beyond the amounts due to defendant Mac Lenders pursuant to the Mortgages, up to the sum of $911,412.46 * * *." Sale proceeds have been distributed satisfying the claims of the Clerk of Court, the County Treasurer and Mac Lenders. The sale proceeds remaining to be distributed, $508,185.39, is less than the $911,412.46 judgment awarded to [Plaintiff] under the express terms of the Final Judgment Entry. Accordingly, [Plaintiff] is entitled to the $508,185.39 of the sale proceeds remaining to be distributed.

> [Royal Oak] argues that [Plaintiff] will receive a windfall if the remaining proceeds are distributed to [Plaintiff] instead of [Royal Oak]. The time for raising such an argument has passed. Again, it is undisputed that the Court's October 30, 2020 Final Judgment Entry was an order of foreclosure and constituted a final, appealable order. [Royal Oak] did not appeal the order. Accordingly, the Court's decision is mandated by the case law cited above. The distribution of the remaining sale proceeds is controlled by order of distribution set forth in the Final Judgment Entry. That order of foreclosure was not appealed, thus the rights and responsibilities of the parties that were established by the Final Judgment Entry may no longer be challenged.

**Appeal**

**{¶26}** Royal Oak disputes whether the foreclosure order was a final appealable order. There is no dispute that a foreclosure order, in general, constitutes a final appealable order. *Sponaugle*, 2019-Ohio-2518 at ¶ 18. For the first time on appeal, Royal Oak argues that the trial court's foreclosure order, in this instance, was not a final appealable order because Royal Oak had pending counterclaims, thereby violating the holding in *Marion Production Credit Assn. v. Cochran*, 40 Ohio St.3d 265 (1988).

**{¶27}** In *Marion Production*, the plaintiff sought judgment on three mortgage agreements. *Id.* at 266. The defendants disputed the validity of the loan agreements and filed counterclaims asserting that the plaintiff had made false representations. *Id.* at 267. The trial court ordered foreclosure on the properties prior to adjudicating the merits of the counterclaims.[4] *Id.* at 268-269. In reversing the trial court, the supreme court held "it was error to allow the foreclosure and subsequent sale of the mortgaged premises prior to complete disposition of the pending counterclaim." *Id.* at 270. The court held:

> In an action upon a note secured by a mortgage, the defendant is entitled to interpose all counterclaims and defenses he may have against the creditor. In this regard, trial courts are imbued with authority to hold separate trials upon any claim, cross-claim, counterclaim, or third-party claim * * *. However, whenever the court orders such separate trials on separate issues, the execution of all judgments determined upon a single claim should be stayed pending a final determination of the entire action as to all parties.

*Id.* at paragraph one of the syllabus. (Citations removed).

**{¶28}** In rendering its decision, the supreme court stated that, once both claims are determined, "the amount of damages due to the party having the greater injury shall be reduced by the party having the lesser injury." *Id.* at 270. The court noted that in foreclosure

---

4. The defendants argued that the judgment should be treated as interlocutory, and the property should not be sold until the remaining counterclaim was resolved. *Id.* at 268.

proceedings, a final judgment determines "the rights of all the parties in the premises sought to be foreclosed upon" and "where the mortgagor's damages ultimately exceed those of the mortgagee, the mortgagee's right to recover the premises is defeated." *Id.*

{¶29} Some courts have criticized aspects of the holding in *Marion Production* and found it to have limited application. *Sky Bank v. Heckathorn*, 6th Dist. Wood No. WD-03-016, 2003-Ohio-5202, ¶ 11; *Anderson v. Scherer*, 97 Ohio App.3d 753 (10th Dist. 1994). In *Heckathorn*, the court noted that the holding in *Marion Production* could not be the absolute rule in all cases as it would eliminate a trial court's discretion to bifurcate a trial, allow an interlocutory appeal, or impose a stay pursuant to Civ.R. 62(E). *Id.* at ¶ 11. Similarly, the Tenth District held *Marion Production* was not a proper basis to reverse where a counterclaim only amounted to a small value of the total judgment and there was no prejudice by the trial court's failure to stay the execution of judgment. *Anderson* at 759; *State ex rel. Myocare Nursing Home, Inc. v. Cuyahoga Cty. Court of Common Pleas*, 145 Ohio App.3d 22 (8th Dist. 2001) ("*Anderson* rejected the *Marion Production* principle that execution must necessarily await the resolution of all other pending claims and reaffirmed the principle that execution may issue upon a judgment rendered final under a Civ.R. 54[B] determination").

### Analysis

#### I. *Marion Production* involved a different factual scenario

{¶30} Following review, we find that *Marion Production* is factually distinguishable from the matter sub judice. In *Marion Production*, the defendants disputed the plaintiff's right to foreclose on the property, preserved its interest in the property, and directly appealed the trial court's decision. Although Royal Oak initially denied certain allegations in its answer and filed counterclaims against Plaintiff, when Plaintiff moved for summary judgment, Royal Oak admitted that it was in default of the land contract and failed to dispute

the amount owed. Royal Oak did not argue that foreclosure was premature or inappropriate. Royal Oak only argued that Plaintiff was not entitled to a deficiency judgment.

{¶31} The trial court granted summary judgment in favor of Plaintiff and entered a foreclosure order. Among other things, the foreclosure order determined the applicable interests, set the priority of the liens, and ordered that the Property be sold by sheriff's sale. The trial court did not address Royal Oak's counterclaim in granting the foreclosure order. The Property was then sold without objection. Royal Oak never appealed or requested the trial court stay the foreclosure order. It never argued that the sale could not proceed due to its pending counterclaims.

{¶32} Rather than attacking the validity of Plaintiff's claim, as was done in *Marion Production*, Royal Oak did not dispute Plaintiff's right to foreclose on the Property. Royal Oak only argued that Plaintiff should not be entitled to any deficiency judgment. Though Royal Oak raised counterclaims for unjust enrichment, quantum meruit, and fraudulent misrepresentation, it did not claim that the counterclaims could extinguish Plaintiff's right to foreclose on the Property, suggesting that the claims are ancillary and separate from the issues surrounding the foreclosure. Therefore, as the court of appeals did in *Heckathorn*, we find that Royal Oak failed to establish that it would be substantially harmed by the trial court's enforcement of the judgment, prior to the resolution of Royal Oak's counterclaims. *Heckathorn*, 2003-Ohio-5202 at ¶ 17 (finding the defendants failed to establish that they would be substantially harmed by enforcement of foreclosure order prior to the adjudication of their claims).

## II. The trial court's Civ.R. 54(B) determination

{¶33} In addition, we find the trial court did not abuse its discretion by following its foreclosure order in distributing the proceeds from the sale. As noted above, in the

foreclosure order, the trial court entered Civ.R. 54(B) language stating there was "no just reason for delay." The supreme court has held that an express determination that there is no just reason for delay is reviewable. *Whitaker-Merrell v. Geupel Co.*, 29 Ohio St.2d 184, (1972). The syllabus provides:

> A trial court is authorized to grant final summary judgment upon the whole case, as to fewer than all of the claims or parties in multi-party or multi-claim actions, only upon an express determination that there is no just reason for delay until judgment is granted as to all the claims and parties. In that event, the judgment is reviewable upon the determination of no reason for delay, as well as for error in the granting of judgment; otherwise, the judgment is not final and not reviewable.

*Id.* at syllabus.

**{¶34}** On similar facts, the Tenth District held "[i]n order to raise the issue that the partial judgment should not have immediate effect, defendant should have appealed that judgment to contest the Civ.R. 54(B) finding of no just reason for delay." *Anderson*, 97 Ohio App.3d at 757. On resolution of this issue, however, we recognize that there is a split of authority about the procedural implications of such an appeal.

**{¶35}** In *Harness v. D. Jamison & Assocs.*, 1st Dist. Hamilton No. C-960735, 1997 Ohio App. LEXIS 2719 (June 25, 1997), the First District considered a foreclosure action in which the defendant counterclaimed for an accounting of debts between the parties that would have offset the mortgage debt. *Id.* at *4. After the trial court granted summary judgment in favor of the plaintiff, and certified there was "no just reason for delay" under Civ.R. 54(B), the defendant appealed. *Id.* at *3. The appellate court found that the trial court erred by granting the foreclosure order while ignoring the pending counterclaim and stated:

> Even if [the defendant] does not dispute his default on the notes and mortgages in the foreclosure action, he asserts a claim against [the plaintiff] that, if proven, may offset the debt he himself owes. Given this set of operative facts, we cannot see

how anything other than a complete adjudication of all claims of indebtedness between the two parties would facilitate the interests of both judicial economy and justice. * * * Therefore, we hold that the issues presented in the foreclosure claim and the counterclaim are inextricably intertwined and should be fully litigated before this court assumes jurisdiction.

*Id.* at * 5. Because the trial court erred by finding there was "no just reason for delay," the court of appeals found there was no final appealable order and dismissed the appeal for resolution of the pending counterclaim. *Id. Accord RBS Citizens, N.A. v. Krasnov*, 8th Dist. Cuyahoga No. 98997, 2013-Ohio-1670 (trial court erred by certifying there was no just reason for delay while there was an unadjudicated counterclaim).

**{¶36}** However, in *Countrywide Home Loans Servicing, L.P. v. Stultz*, 161 Ohio App.3d 829, 2005-Ohio-3282, ¶ 23 (10th Dist.), the Tenth District did not dismiss a similar case as lacking a final appealable order, but rather reversed the trial court's decision entering Civ.R. 54(B) language and remanded the matter to address the defendant's counterclaim. *Id.* at ¶ 27, citing *Bank One, Columbus, N.A. v. Lucas*, 10th Dist. Franklin No. 85AP-418, 1986 Ohio App. LEXIS 7447 (June 30, 1986).

**{¶37}** While there is a split in authority on this issue, it does not impact resolution of the matter herein. In *RBS*, *Harness*, and *Stultz*, the defendants directly appealed the trial court's foreclosure order prior to the sale of the property.[5] Unlike those cases, Royal Oak never directly challenged the trial court's foreclosure order either by attempting to appeal the foreclosure order, or by requesting a stay of foreclosure. Royal Oak could have and should have appealed the trial court's express Civ.R. 54(B) determination that there was "no just reason for delay." Upon an appeal of that determination, this court could have

---

5. Royal Oak cites another case that is inapplicable to the facts herein. *Woods Cove II, L.L.C. v. Am. Guaranteed Mgt., Co.*, L.L.C., 8th Dist. Cuyahoga No. 103652, 2016-Ohio-3177. In *Woods Cove*, the court of appeals found the trial court implicitly resolved a claim in its order granting summary judgment and therefore there was no pending counterclaim. *Id.* at ¶ 13.

reversed the Civ.R. 54(B) certification or dismissed the appeal for resolution of the counterclaim. Rather than attacking the validity of Plaintiff's interest, or appealing the Civ.R. 54(B) determination, Royal Oak simply allowed the matter to proceed to a sheriff's sale.

**{¶38}** Although Royal Oak now claims that the Civ.R. 54(B) language in the foreclosure order is inconsistent with the rule in *Marion Production*, it did not appeal that decision, which is now a final judgment. *Anderson*, 97 Ohio App.3d at 757-758 ("Although the trial court's judgment containing the Civ.R. 54[B] language is inconsistent with the *Marion Production* syllabus rule with respect to the Civ.R. 54[B] findings, defendant did not appeal that judgment, and it is now a final judgment"). Since the foreclosure decree became final, the rights and responsibilities are no longer subject to challenge. *Roznowski*, 139 Ohio St.3d 299 at ¶ 39. Therefore, our review is limited to whether the sale conformed to law. *Sponaugle*, 2019-Ohio-2518 at ¶ 19. Royal Oak is not permitted a "second bite of the apple" to challenge the priorities that were already established in the foreclosure order.

**{¶39}** Having reviewed the record, we find the trial court did not abuse its discretion in the confirmation proceedings. In this case, there are no challenges to the confirmation proceedings, merely an attempt to reorder the priorities established in the foreclosure order. Royal Oak failed to assert its argument until it was too late, and now asserts this new argument for the first time on appeal. The Property has been sold, the priorities have been set, and the trial court has distributed the proceeds from the sheriff's sale in accordance with its prior order. We further note that Royal Oak cannot show any prejudice because its ancillary claims were essentially bifurcated and remain pending below.[6]

### III. Royal Oak's untimely argument is raised for the first time on appeal

**{¶40}** Furthermore, it is well established that a party may not raise new issues or

---

6. We acknowledge that Royal Oak may claim prejudice because Plaintiff has a higher priority interest in the foreclosure order, however, consistent with this opinion, the foreclosure order was never appealed.

legal theories for the first time on appeal. *Wells Fargo Bank, N.A. v. Washington*, 12th Dist. Butler No. CA2014-10-214, 2015-Ohio-2988, ¶ 17; *BAC Home Loans Servicing, LP v. Mullins*, 12th Dist. Preble No. CA2013-12-015, 2014-Ohio-4761, ¶ 33 ("it is axiomatic that a party cannot raise new issues or legal theories for the first time on appeal and failure to raise an issue before the trial court results in waiver of that issue for appellate purposes"). Again, Royal Oak did not appeal the trial court's Civ.R. 54(B) designation when it was appropriate and never contested the sale of the Property or requested a stay. During the hearing on its motion to disburse, Royal Oak never suggested that the trial court's foreclosure order was not a final appealable order. Instead, Royal Oak argued that it was entitled to disbursement of funds inconsistent with the trial court's foreclosure order. It was not until this appeal that Royal Oak first argued that the trial court's foreclosure order was not a final appealable order and therefore should not be followed in the confirmation stage of the proceedings. Accordingly, Royal Oak's first assignment of error is overruled.

{¶41} Assignment of Error No. 2:

{¶42} THE TRIAL COURT ERRED IN FINDING THAT THE DISTRIBUTION OF EXCESS FORECLOSURE SALE PROCEEDS IS CONTROLLED BY THE COURT'S OCTOBER 30, 2020[,] FINAL JUDGMENT ENTRY RATHER THAN THE PLAIN LANGUAGE OF R.C. 2329.44.

{¶43} In its second assignment of error, Royal Oak argues that the trial court erred by failing to award it the "excess funds" allegedly remaining following the distribution of the sale proceeds.

{¶44} R.C. 2329.44 provides the statutory procedure for the distribution of excess funds remaining after judicial sales. *State ex rel. Macey v. Byrd*, 8th Dist. Cuyahoga No. 103646, 2016-Ohio-4703, ¶ 13. Pursuant to that statute:

On a sale made pursuant to this chapter, if the officer who

makes the sale receives from the sale more money than is necessary to satisfy the writ of execution, with interest and costs, the officer who made the sale shall deliver any balance remaining after satisfying the writ of execution, with interest and costs, to the clerk of the court that issued the writ of execution. * * * The clerk of the court that issued the writ of execution is not required to pay the balance to the judgment debtor or the judgment debtor's legal representatives * * *.

R.C. 2329.44.

{¶45} In the present case, the trial court set the priority lienholders in its foreclosure order. Following the County interests, the trial court named MAC Lenders as the third priority interest and Plaintiff as the fourth priority interest:

> 3. To [MAC Lenders], any and all actual proceeds received pursuant to the Sheriff's sale, in lieu of or over and above the credit bid, if any, up to the sum of $1,040,277.74 due and owing to [MAC Lenders], along with interest accruing at a rate of 14% per annum from October 31, 2020 and fees accruing at a rate of 1% per quarter;
>
> 4. To [Plaintiff], all amounts paid at the Sheriff's sale above and beyond the amounts due to defendant [MAC Lenders] pursuant to the Mortgages, up to the sum of $911,412.46 with interest at a rate of 6.10% per annum from March 1, 2018 plus $30,622.58 until paid in full, plus court costs, advances and other charges, as allowed by law on its Land Contract.
>
> * * *

{¶46} The Property sold for $1,621,700. The record reflects that MAC Lenders has received its full distribution. Therefore, Plaintiff is the next priority interest and is entitled "up to the sum of $911,412.46."

{¶47} According to the second amended entry confirming sale, ordering deed, and distributing sale proceeds, there remains $508,185.39 left to be distributed. Therefore, it is clear that Plaintiff will not receive the full award it was entitled to under the terms of the foreclosure order. Contrary to Royal Oak's argument, there are no excess funds to distribute in accordance with R.C. 2329.44. The funds held by the clerk are more accurately

characterized as "remaining funds" subject to distribution to the next priority lienholder. As noted previously, Plaintiff's award will be less than it was entitled to under the terms of the foreclosure order. The characterization of these remaining funds as "excess funds" is inaccurate. Accordingly, Royal Oak's second assignment of error is without merit.

{¶48} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.